BEN HIGHTOWER v. THE STATE.

No. 1489. Decided February 14, 1912.

**1.—Assault to Commit Rape—Charge of Court—Female Under Age of Consent.**

Where, upon trial of assault with intent to commit rape, the court, in applying the law to the evidence, charged the jury that if defendant made the assault on the prosecutrix with the present intent to have carnal knowledge of her, with or without her consent, and that she was under the age of consent and not the wife of defendant, to find him guilty, there was no error.

**2.—Same—Charge of Court—Force.**

Upon trial of assault with intent to rape upon a child under the age of

consent, it was not encumbent upon the State to show that the defendant used force upon her, or that the prosecutrix consented. Following Croomes v. State, 40 Texas Crim. Rep., 672, and other cases.

### 3.—Same—Charge of Court—Verdict by Lot.

Where it did not appear from the record on appeal that the court instructed the jury that if they found defendant guilty they would not be permitted to determine the number of years of punishment by adding together the number of years each juror deemed right and dividing the sum by twelve, there was no error.

### 4.—Same—Sufficiency of the Evidence.

Where, upon trial of assault with intent to rape on a female under the age of consent, the evidence sustained a conviction, there was no error. See opinion for facts held sufficient to sustain a conviction.

Appeal from the District Court of Kaufman. Tried below before the Hon. F. L. Hawkins.

Appeal from a conviction of assault with intent to rape; penalty, thirty years imprisonment in the penitentiary.

The opinion states the case.

*Geo. G. Shaw* and *Nester Morrow*, for appellant.—Upon question of the court's charge: Cromeans v. State, 59 Texas Crim. Rep., 611, 129 S. W. Rep., 1129.

*C. E. Lane*, Assistant Attorney-General, and *S. J. Osborne*, County Attorney, for the State.—On the question of the sufficiency of the evidence: Taylor v. State, 44 Texas Crim. Rep., 153; McAvoy v. State, 41 id., 56; Herbert v. State, 49 id., 72; Morris v. State, 13 Texas Crim. App., 65, and cases stated in opinion.

PRENDERGAST, JUDGE.—On July 3, 1911, appellant was properly indicted for an assault with intent to commit rape upon a child under fifteen years of age, charged to have been committed on June 30, 1911. He was convicted and his penalty fixed at thirty years in the penitentiary.

The indictment is regular and charges the offense properly and the appellant makes no objection thereto.

Under the questions raised and as the testimony is brief we will give the substance of the whole of it. By appellant's mother, Jodies Boykin, the State proved that appellant was sixteen years old on December 8, 1910; that he had never been married. On cross-examination she said he had been a good boy and was never before arrested.

M. Brooks, the father of the assaulted child, testified for the State to the effect that he lived on a farm in Kaufman County with his family, consisting of his wife and three children; that the appellant lived on his place at the time and for several months prior to the offense, about three-quarters of a mile from his residence. He gave to the jury a plat of his buildings, and outhouses, and fields adjacent to his residence. One of his outhouses was an automobile house. The opening

to it was not towards his residence, so that anyone therein could be seen from his residence; that on the day of the assault appellant had no business in his auto house; that at the time the assault was committed on his child he was at Forney, a few miles from his residence, that he there got an automobile and went immediately home, reaching there about thirty minutes after the assault; that the way he first heard it was, that his wife 'phoned to him at Forney; that as soon as he reached his home and was told of the assault he went to his field, not a great distance from his residence, where appellant was still plowing; that when he went up to appellant he noticed appellant was a little bit nervous before he said anything to him; that on the day and at the time the assault occurred there was no white man about his house or place; that his little daughter, the assaulted child, had never been married to anyone. It was about sixty feet from the corner of his residence to this auto house in which the assault is charged to have occurred.

Clarrissa Brooks, the assaulted party, for the State testified: That she was nine years old, had been to school in the country, was in the second grade, knew and identified the appellant. "One day not long ago, he came up to the house where I was raking off the yard and my brothers, who are younger than I, were with me; I have two brothers and one of them was helping me rake off the yard. Defendant came up there to get a single-tree. I think he drew some water; he came out to where I was first before he got his water and said 'Come on out to the barn' he wanted to show me something. He did not say anything about what he wanted to show me. I went with him out to the automobile house and when we got to the automobile house he took me in it. He did not say what he was going to show me. Did not say anything about whether it was pretty or not. The auto house hadn't any door. When I went in the auto house with the defendant, defendant pulled up my dress and took down my little pants and felt of me. He put his finger in my privates. Then I hit him and told him to stop; I got away from him after he let me loose. He had me in there and had hold of one of my hands. I hit him with my hand and told him to stop and he then stopped. I did not jerk loose from defendant, he turned me loose when he got through. He said for me not to tell. He quit after I hit him and after I told him to stop. He did not quit before that. From the auto house I went out in the yard until defendant went out in the field and then I told mamma, went in the house and told mamma right after defendant went to the field. He had never offered at any other time before to treat me that way. I did not know what he wanted when he went into the auto house with me. I do not remember how it was that I did not go clear down to the barn with him."

On cross-examination, among other things, she testified: That she had been knowing appellant a year or two and he had been about their house a good deal. That he took the single-tree in the auto house with

him and put it down. That this single-tree was the broken one; he carried another back to the field with him when he went. The field was pretty close to the house; that he was working a way down in the field; she saw him when he came to the house bringing the broken single-tree and that he got another off of a plow and took that back with him; that her mother was in the house at the time this occurred and a negro woman was on the place at the time washing, but was at her (the negro's) house; that another negro woman was in the house cooking; that appellant told her he came to the house for a single-tree; she did not know whether he spoke to her mother or not; she did not think he spoke to the negro cook; that he drew the water from the cistern after they were at the auto house. The cistern where he drew the water was on the back gallery of the house. Her mother was in the kitchen. One end of the auto house is open, has no door, but can not be seen into from the house. When defendant started to leave, he told her not to tell and she told him that she would not. He unbuttoned two buttons of her drawers and then "I told him not to do it; he buttoned them up; he stopped when I told him to. He said he wanted to show me something when I was in the yard, but did not tell me what it was he wanted to show me. Her little brother did not go with her when she went to the auto house; she did not cry; he had hold of her hand when he was unbuttoning her drawers; she thinks he said nothing to her when he did that.

On redirect examination she testified: "After he unbuttoned these two buttons he felt of me. My drawers did not drop down; he just unbuttoned the front part of them and took his hand and felt of me and he took his finger and put it in my privates. I did not jerk loose from him. He had hold of my hand and he let me loose after I hit him. We were in the back part of the automobile house behind the auto. He took me behind the auto with him, he told me to come on back there. The negro went behind the auto first, I went back there with him, following him. He left the broken single-tree in the auto house; he did not get the single-tree that he took back to the field with him out of the auto house; he got it off of a plow out in the field. When he was unbuttoning my drawers and feeling of me he was kneeling; I was standing up. Ben (appellant) is a negro."

The State introduced George Moore who testified that he and appellant were plowing the day the assault was committed. That appellant went to the house to get a single-tree before dinner. He did not remember the exact time of day; he afterwards came back with another single-tree; he was gone about fifteen minutes; some thirty or forty minutes after that Mr. Brooks, the father af the assaulted child, came to the field where they were. Before Mr. Brooks said anything to the witness or appellant "I kind o' noticed Ben (appellant) looked a little strange, but I didn't know what about it. As near as I can get at it he looked like anybody that was scared, looked like they had done something, as near as I can get at it." On cross-examination he tes-

tified that appellant's plow, when he left it with the broken single-tree to go get another, was about seventy-five yards from the house; that he got one and used it instead of the broken one after he came back; when he came back he went to plowing. "He looked kind o' pale, kind o' sick—I didn't know what he had done, didn't ask him anything about it. I first told Mr. Brooks he looked like he had done something yesterday." Appellant remained at work until Mr. Brooks came and he made no effort to run or get away.

Mrs. Brooks, the mother of the child, for the State, testified: She did not see the appellant leave the house and go to the field with a single-tree; that her child made complaint to her about the matter and told her what the negro had done. She telephoned her husband at Forney where he was at the time. On cross-examination she testified that she saw appellant through the window when he came to the house, standing talking, but she did not then see her child Clarissa; she thought he was talking to the little boys; that is the only time she saw him on this occasion. She heard his voice but did not see him further, because she was in the house. On redirect examination she testified that there was no white man on the place during this time. That there was a negro woman in one of the houses, a cabin in her yard. This is all the testimony the State introduced.

The appellant for himself testified: "I am sixteen years old. I heard the little girl testify about this matter and she told it all right all but some things, one thing she said I held her—I never held her. When she told me to quit I quit; I buttoned up her drawers then. I asked her was she going to tell it and she said no. I did not have any intention of forcing her against her will. After she told me to quit I did not bother her any more.

"I would not rape anybody. I would not throw a little girl down and just choke her and force her. I did not intend to do anything like that to that girl. That single-tree was broken and I just put it in the auto house. I don't know what I wanted to take the little girl down to the barn for. I didn't start to the barn with her. I said something to her about going to the barn. I did not tell her I wanted to show her something pretty up there before we started. She asked me what I wanted to go to the barn for and I told her I wanted to show her something. I don't know what I was going to show her. I went in the auto house and around the auto and unbuttoned the little girl's drawers; I did not take them down; they dropped down in front. I never felt of her. I did not put my finger in her privates. I did not put my hand on her. I did not do anything like that. I unbuttoned her drawers. I don't know that she lied when she said I put my finger in it. She would know, I guess. I tell the jury that I took that little girl in there for no other purpose except to unbutton her drawers. That is all. I had no other intention at all. When Mr. Brooks came to the field it did not scare me any. I was scared when Mr. Brooks came to the field. I was not scared about the way I had treated his

little girl. If the little girl had been willing I wasn't willing. I don't know why I took her in that auto house. She never jerked loose from me. I never had hold of her at all. I did not have hold of her hand. She was mistaken about that. She did not hit me as I know of; never hit at me. She told me to stop. I asked her not to tell it and she said she wouldn't. That is when I quit and went out of the auto house. I disremember which went out of the auto house first."

The charge of the court first states the case to the jury and that the appellant had plead not guilty. He restricts the jury to the consideration of the first count in the indictment and tells them to disregard the others. He next correctly defines an assault and battery. Then correctly tells them what is rape of a female under fifteen years of age, in accordance with the statutes. There was no complaint in the lower court by bill of exceptions or motion for new trial to either of these portions of the charge.

Paragraph three of the charge is as follows: "If you believe from the evidence beyond a reasonable doubt that about the time and place charged in the first count in the indictment, the defendant, Ben Hightower, did make an assault on Clarissa Brooks, a female, and did take hold of said Clarissa Brooks, with his hand, or indecently handle and feel of her person, with the present intent on his part to then and there have carnal knowledge of her, either with or without her consent, and that said Clarissa Brooks at said time was under fifteen years of age, and at said time was not the wife of defendant, then you will find defendant guilty of an assault with intent to rape, and assess his punishment at confinement in the penitentiary for any term of years not less than two."

In the next paragraph, without numbering it, he correctly tells the jury that the burden of proof is on the State, that the defendant is presumed to be innocent until his guilt is established, etc., and if they have a reasonable doubt as to his guilt to acquit him. And in the last paragraph, not numbering it, he correctly tells them that they are the judges of the facts proven, credibility of the witnesses, etc. Both of these latter paragraphs of the court's charge are the regulation charges that are given practically in all criminal cases.

The only complaints of the court's charge are in the motion for new trial. There were no bills of exceptions thereto. The first complaint of the charge is to the third paragraph above quoted, on this ground alone: "That by this charge the jury are instructed, in effect, that it was immaterial whether the said Clarissa objected to such handling of her person by defendant or not, and that it was immaterial whether the defendant intended to use force if necessary in accomplishing his intended carnal knowledge of said Clarissa Brooks."

The next complaint of the charge of the court is: "2d. The defendant further says the court erred in refusing to give the special instruction asked by the defendant endorsed, 'special charge No. 1,' wherein the court was asked to instruct the jury that before they could find the

defendant guilty they must find that he intended to have carnal knowledge of the said Clarissa Brooks whether she consented or not and by force if necessary."

The requested charge referred to in this second ground above quoted on the subject complained of was as follows: "The jury are further charged that in order to find the defendant in this case guilty of an assault to rape . . . you must be satisfied beyond a reasonable doubt that he, as the time he took her by the hand and unbuttoned her drawers, if he did, that he intended then and there to have sexual intercourse with her whether she consented or not, and if you fail to so find, you should acquit him of assault to rape . . ."

The next complaint of the charge is that the court erred in failing to instruct the jury that before they could find the defendant guilty of an assault to rape that they should believe, beyond a reasonable doubt, that it was the defendant's purpose and intent at the time he put his hands on the said Clarissa to have carnal knowledge of her then and there with or without her consent and by force if necessary.

The only other ground of complaint of the court's charge is that he erred in instructing the jury that if they found the defendant guilty they would not be permitted to determine the number of years of punishment, by adding together the number of years each juror thought right and dividing the sum by twelve, because such instruction was calculated to impress the jury that the court expected a verdict of guilty and that the penalty should be a heavy one. As to this last complaint, the charge has nothing whatever on the subject mentioned therein; so that there is nothing for the court to pass on as to that question.

We have given above the evidence, the charge of the court and appellant's various complaints with reference to the charge of the court so that the whole matter may be comprehended and the questions raised decided as a whole.

It is clearly shown by the requested charge of appellant and the objections made to the charge of the court that his contention is that before a conviction of the appellant could be had, it was incumbent upon the State to show that the appellant used force upon the assaulted child other than taking hold of her. In other words, his contention is that the offense of assault to commit rape is not shown if the child consented, or unless it be shown that actual force was intended and used on the child without her consent.

It is useless to take up and again discuss the statutes and the decisions of this court on that subject.

This court, through Judge Brooks, in Croomes v. State, 40 Texas Crim. Rep., 672, in an exhaustive and clear opinion takes up and discusses the prior decisions of this court on this subject and all of the statutes bearing upon the same, and then said: "Therefore, without elaboration, we hold that, whether the female under fifteen years of age consents or not to an assault with intent to rape, it is an offense, *and it makes no difference whether or not there is any force.* To hold other-

wise destroys the unity of these statutes, and renders invalid a provision of the assault with intent to rape statute. This position is strengthened by the previous adjudications of our own court. As far back as Mayo v. State, 7 Texas Crim. App., 342, Presiding Judge White said, in combating the idea that force is necessary to make out an assault with intent to rape: 'The answer to this proposition is that the law makes carnal intercourse of a female under ten years ipso facto rape; the tender years of the female stand in lieu of and supply all that would be requisite to allege and prove in other cases. Now, if the party can be convicted and punished where he has accomplished his purpose, is it not, a fortiori, absurd to say he can not be punished under similar circumstances for attempting to perpetrate the crime? The law says it is not necessary that force, fraud, or threats shall be used on a female under ten in ravishing her, and, if she consents, it is rape nevertheless. And so in the attempt she may consent, and yet the attempt is an act of force and fraud, because she is incapable of consent, and to take advantage of her consent is both force and fraud in contemplation of law.' "

The said holding and opinion in the Croomes case was expressly approved by this court in another clear and elaborate opinion by Special Judge Cobb in the case of Cromeans v. State, 59 Texas Crim. Rep., 611. It is expressly held in that case: "It is utterly immaterial that consent, and if she consent and there be no force, it is yet rape. The child being embraced in the word 'woman' in article 608, and unlawful violence and injury being done upon her in making the assault, her consent can not take away the wrong. Any touching of the person without right, intending thereby to injure, if thereby the slightest injury be committed, is an assault, and consent of the party is no defense." Again in the same case, on page 622, he said: "That if one take hold of a child under fifteen years of age and handle her in such manner as under the circumstances of the particular case demonstrates a present intent to at once so subject her to his power, she consenting or not, as that he may now accomplish the act of intercourse, he would be guilty of the offense . . ." We approve and follow these decisions.

The only other complaint by appellant is to the action of the court in not granting him a new trial, claiming that the evidence is insufficient to support a verdict of assault to rape, because, he claims, the undisputed testimony of the prosecutrix is that as soon as she told the defendant to quit, he at once quit, and further that he used no force as against her will, and that at the time of the alleged assault the parties were within twenty yards of the prosecutrix' mother and two colored women and that under the circumstances he could not have intended to have carnal knowledge of her against her will, and because, he claims, the verdict of the jury is excessive and must have been induced by prejudice or passion not properly arising out of the facts of the case.

Here again is shown appellant's contention, that the offense is not made out if the child consent, and he does not intend to have sexual intercourse with her by force against her will. This is not the law as shown by the decisions above quoted.

We have given above the evidence in full substantially. The court, by the charge, expressly required the jury to believe beyond a reasonable doubt that the appellant made an assault upon the child and "did take hold of her with his hand, or indecently handle and feel of her person, with the present intent on his part to then and there have carnal knowledge of her, either with or without her consent," with the other necessary ingredients to constitute an assault with intent to rape before they could convict him. The evidence was amply sufficient to show clearly all this. The jury believed what the child swore. They are made, under the law, the exclusive judges of the credibility of the witnesses and the weight to be given to their testimony. Under their oaths they have said with ample evidence to sustain them that the appellant was guilty. The learned district judge who tried the case heard the testimony, saw the witnesses, and has refused to disturb the verdict. Under the law and our duty, as we see it, we have no power or authority to set aside the verdict.

The judgment will, therefore, be affirmed.

*Affirmed.*