## W. H. Love v. State.

No. 1444.  Decided October 16, 1912.

Rehearing denied November 13, 1912.

1.—Assault to Rape—Charge of Court—Specific Intent—Female Under Age of Consent.

Where, upon trial of an assault with intent to rape upon a female under the age of consent, the court fully and clearly submitted the law to the jury and instructed them that they must find beyond a reasonable doubt that defendant had the specific intent to commit rape at the time of the alleged assault, and also upon the question of aggravated assault, and the charge was more favorable than the law authorized, although some of the words were omitted inadvertently that might have been used, and no injury resulted to defendant, there was no reversible error under Article 743, Code Criminal Procedure.  Distinguishing Cromeans v. State, 59 Texas Crim. Rep., 611.

2.—Same—Requested Charges—Intent—Force.

Where part of the requested charge was embraced in the court's main charge, with reference to the specific intent to commit rape, and that with reference to force was not the law of the case, there was no error in refusing same.  Following Hightower v. State, 65 Texas Crim. Rep., 323.

3.—Same—Evidence—Circumstances.

Where, upon trial of assault with intent to commit rape, other witnesses had testified that a certain State's witness was a minister of the gospel, without objection, there was no error in admitting further testimony to this effect; besides, it was proper by this testimony to show why the defendant knew the prosecutrix, etc.

4.—Same—Evidence—Complaint by Prosecutrix.

Where, upon trial of rape, the State was permitted to show by the mother of the prosecutrix that the latter complained to her about defendant's assault two or three days thereafter, and the court afterwards withdrew said testimony, there was no error as like testimony had already been admitted without objection, besides, the above testimony was admissible in the first instance.

5.—Same—Evidence—Flight.

Upon trial of assault with intent to rape, there was no error in permitting the officer to testify what efforts he had made in locating the defendant, and offering reward after he had fled the country.

6.—Same—Argument of Counsel.

Where, upon trial of assault with intent to rape, the bill of exceptions to the argument of State's counsel did not present the matter so that the Appellate Court could pass thereon, and did not request special instructions to withdraw same, there was no reversible error.

7.—Same—Sufficiency of the Evidence.

Where, upon trial of assault with intent to rape, the evidence was sufficient to sustain the conviction, there was no error in the court's refusal to submit a peremptory charge to find defendant not guilty.

8.—Same—Specific Intent to Rape.

Where, upon trial of assault with intent to rape, the jury was authorized to believe from all the facts and circumstances in evidence that at the time the defendant committed the alleged assault upon a female under the age of consent he had the specific intent then and there to have carnal knowledge of her, and the court properly submitted this issue to them, the conviction is sustained.  See opinion for facts showing a specific intent on the part of the defendant to commit rape upon a female under the age of consent.

Appeal from the District Court of Lamar. Tried below before the Hon. Ben H. Denton.

Appeal from a conviction of assault with intent to rape; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*B. B. Sturgeon* and *Moore & Hardison,* for appellant.—On question of specific intent: Cromeans v. State, 59 Texas Crim. Rep., 611.

*C. E. Lane,* Assistant Attorney-General, for the .State.—On question of admitting testimony that one of the State's witnesses was a preacher: Melton v. State, 24 Texas Crim. Rep., 224; Burney v. State, 21 id., 565; Reagan v. State, 28 id., 227; Franklin v. State, 34 Texas Crim. Rep., 203.

PRENDERGAST, JUDGE.—Appellant was indicted for an assault upon Gladys Young, under fifteen years of age, with intent to ravish and have carnal knowledge of her, she not being his wife. He was convicted and the jury fixed the lowest penalty—two years in the penitentiary.

The testimony, without contradiction, shows that at the time of the alleged assault, May 10, 1910, appellant was a minister of the gospel and pastor of a country church a few miles distant from the residence of Gladys Young's parents and family, and had then been such pastor for about two and a half years; that he preached at said church every other Sunday during this time, and was a frequent visitor at the Young home, the Youngs being members and attendants upon his church and preaching; that on or about May 10, 1910, shortly before noon, he reached the home of the Youngs on one of his usual visits, his wife accompanying him. Gladys Young was then just a little over thirteen years of age. She was in the garden alone, gathering vegetables for dinner. Instead of going in the house, where his wife went upon their arriving at the Youngs', seeing Gladys in the garden, he went in to where she was and for a while helped her to gather the vegetables at a point in the garden where they could be seen from the residence. After completing gathering the vegetables, he asked Gladys to kiss him, which she either did or permitted him to kiss her. Then he went over to the other side of the garden, where he, when upon his knees, or on the ground, could not be seen from the residence. He called Gladys over there, and asked her to kneel down, and he then kissed her and drew her over next to him, put one arm around her the other up her dress. He was then on his knees. When he put his hand up under her dress he touched her privates, and said, "You are a sweet girl, are you not?" She did not reply. He repeated his statement or question. She then shook her head and started to leave him. He put his arm around her; she tried to jerk back, and he held her

hard and fast. She jerked loose just as soon as his grip relaxed, and started to the house. He called her back to get the basket of vegetables; then she succeeded in leaving the garden, and after she got out, he said to her, "You are not going to tell, are you?" She said nothing, but shook her head; she was afraid not to. Gladys got acquainted with appellant some two and a half years before this occurrence by his being a minister, visiting their home and preaching in the neighborhood. She had been seeing him nearly every Sunday—at least every other Sunday when he came there to preach.

It seems that this assault became noised around in the community, and some of his members undertook, two or three weeks after it, to find out from him about it. Dr. McCuistion, one of his members, in two or three weeks after it occurred, interviewed him and asked him about it. He said to Dr. McCuistion, "Well, I did kiss her." McCuistion asked, "Is that all you done?" He said, "No, it ain't, I did put my hands under her clothes; why I did it I don't know. I guess the old Devil was in me." That he would not harm a hair on her head for the world. Soon after this talk Dr. McCuistion, another of his members, Mr. Butler, who was to have been present when the interview took place, but had not reached where Dr. McCuistion was at the time, then arrived and appellant reiterated substantially to Butler what he had stated to Dr. McCuistion.

Very shortly after this, appellant fled the country. The sheriff continuously hunted for him, had postals describing him distributed over all the country, and sought to arrest and have him arrested on this charge. Some five or six months afterwards, he was arrested by the officers of El Paso, Texas, placed in jail there, the sheriff of Lamar County informed of it, and then the sheriff of Lamar County went after, got him from the officers and jail in El Paso County, and took him back to Lamar County for trial.

There was other testimony introduced showing the situation of the garden and residence of the Youngs, the surroundings, and a public road lay some distance therefrom, and the obstructions between where he had Gladys when he assaulted her and the Youngs' residence. It is unnecessary to detail this testimony. It was all introduced for the purpose of showing the situation to the jury and their consideration in determining whether or not the assault was committed at the time and place charged.

The appellant did not testify. He introduced several witnesses, who proved that his reputation as a moral, law-abiding citizen was good.

The court gave a substantially correct and apt charge of the law as applied to the evidence. After stating what the indictment charged, and that the defendant plead not guilty, in separate paragraphs, he quoted in succession Article 1008 Penal Code, the first part of Article 1013, and then substintially subdivision two thereof. Then substantially subdivision 5 of Article 1022 Penal Code. Then

rape of a female under fifteen years of age as defined by the statute; then he told the jury that in order to constitute carnal knowledge it is necessary that the male member of the man penetrate the female organ of generation, but it is immaterial as to the particular depth of such penetration. Then follows the 6th and 7th subdivisions of the charge, as follows:

"6. Now if you believe from the evidence beyond a reasonable doubt, that the defendant, W. H. Love, did in the County of Lamar and State of Texas, on or about the 9th day of May, 1910, commit an assault in and upon the body of Gladys Young with the specific intent then and there to have carnal knowledge of the said Gladys Young by penetrating her organ of generation with his male member, and if you further so believe that the said Gladys Young was then and there a female under the age of fifteen years and not the wife of the defendant, then you will find the defendant guilty of an assault with intent to rape and assess his punishment at confinement in the State penitentiary for any term of years not less than two, but unless you do so believe you can not convict the defendant of an assault with intent to rape.

"7. If you should find that the defendant put his hands upon, took hold of, kissed or placed his hands upon the prosecutrix in tute an assault, but should further believe that he only intended to indulge in improper fondling or familiarities of her person and not to have carnal knowledge of her, then you cannot convict him of an assault with intent to rape, but you may in such case if you find him guilty convict him of an aggravated assault and battery and if you find the defendant guilty of an aggravated assault and battery, you may assess his punishment at a fine of not less than $25 nor more than $1000, or by imprisonment in the county jail not less than one month nor more than two years, or by both such fine and imprisonment."

In the next paragraph he told them that if they should believe from the evidence that the defendant was guilty of an assault but had a reasonable doubt as to whether it was an assault with intent to rape, or an aggravated assault to give him the benefit of the doubt and not find him guilty of anything higher than an aggravated assault. Then he follows with the 9th and 9½ subdivision of the charge, as follows:

"9. The mere fact, if it is a fact, that the defendant took hold of, kissed, or placed his hands upon the person of the prosecutrix, would not make him guilty of an assault with intent to commit rape, but before you can convict the defendant in this case, of an assault with intent to rape, you must believe from the evidence beyond a reasonable doubt that Gladys Young was at the time under 15 years of age and not the wife of the defendant and that the defendant took hold of, kissed or placed his hands upon the prosecutrix in such manner as to constitute an assault and at the very time intended

instantly and without suspension of action and without waiting to ascertain whether or not she would consent to then and there place herself in such attitude that the final act of carnal intercourse could be performed upon her, whether the purpose was to put her in such attitude by his force alone or by her free co-operation and consent.

"9½. If you should believe that the defendant took hold of, or kissed or placed his hands upon the prosecutrix, but you further believe that he did not intend at the time to have carnal knowledge of her you cannot convict him of an assault with intent to rape." The charge closed with the 10th subdivision thereof, which is subdivided into several paragraphs. By the first he told the jury that the fact that appellant has not testified shall not be taken as a circumstance against him and not to take into consideration that fact nor allude to, nor discuss it in their deliberations. Then, that in all criminal cases the burden of proof is on the State, the defendant is presumed to be innocent until his guilt is established by legal evidence beyond a reasonable doubt, and if they have a reasonable doubt as to his guilt to acquit him, and that they are the exclusive judges of the facts proved, the credibility of the witnesses and the weight to be given to their testimony.

It will be observed that by the 9th paragraph of the charge, quoted above, the court undertook to give the principle and apply it, which was specifically laid down by this court in Cromeans v. State, 59 Texas Crim. Rep., 619, but perhaps omitted some words therein to make it an entirely complete sentence, but when the whole paragraphs 9 and 9½ of the charge are taken into consideration, it was as favorable, if not more favorable, to the appellant than the law would authorize. At any rate, even though some few words might have been inadvertently omitted by the court in paragraph 9, under Article 743 (723) Code of Criminal Procedure, no harm whatever resulted to appellant, and especially in view of the fact that by subdivisions 6 and 7 of the court's charge, the law applicable was fully, fairly and favorably submitted to the jury. Hence, none of appellant's criticisms of the charge of the court present any reversible error whatever, even if his criticisms and objections thereto are so presented that we can consider them at all.

Appellant requested several special charges. In No. 2 of them, he requests the court to charge the jury that if they believe from the facts in evidence, that the appellant did indulge in improper fondling and familiarities of the person of Gladys Young, such would not warrant them in finding him guilty of an assault with intent to rape, unless they further find, beyond a reasonable doubt, that he did then and there actually intend to have sexual intercourse with her. This much of that special charge was clearly and substantially covered by the court's charge. This special charge then further says, "and, unless you further believe, beyond a rea-

sonable doubt, that the defendant did then and there go further and use upon Gladys Young that kind of force that was necessary to place her in the position and attitude in which the act of sexual intercourse could have been performed with her," and unless the jury so believe to find him not guilty of an assault with intent to rape. This latter part of this charge is not the law and should not have been given. Hightower v. State, 65 Texas Crim. Rep., 323, 143 S. W. 1168, and cases there cited.

Insofar as appellant's charge No. 3 is concerned, such of it as was necessary to be given, was fully and substantially covered by the charge of the court.

By appellant's bill of exception No. 1, he objected to the State proving by Dr. McCuistion that appellant was a preacher or minister of the gospel, and that the country church, where the Youngs attended and were members, was one of his appointments. The court, in allowing the bill, qualified it by explaining that this testimony was admitted to show why appellant knew the prosecutrix and the length of time, etc., "and then the court will see that other witnesses testified that he was a minister without any objection whatever." It is our opinion that this evidence was legitimate and proper under the circumstances of this case, but even if not, under the qualification of the bill by the court, which was accepted by appellant, other witnesses testified to the same thing without any objection. Hence, in any event no error was committed.

The court refused to allow appellant's second bill of exception where, it seems, he claimed he objected to the same proof by Charles Young, and also by bill No. 4 of the same question to Mrs. Young. The court stating that this question was not asked this witness, but if it had been, he gave the same reasons as in bill No. 1. As presented to us there was no error shown in this matter.

By appellant's third bill of exception it is shown that the State asked Mrs. L. E. Young, the mother of the prosecutrix, while she was on the stand, if her daughter Gladys complained to her of appellant's treatment of her. The witness answered that she did. It then developed by further examination of this witness that the appellant's assault upon Gladys was committed just before noon on Monday and that her mother stated that she complained to her about it on Thursday morning following. The court, in allowing the bill, explained and qualified thus: "The court will see that the witness never detailed any statement whatever, but simply stated the prosecutrix made complaint to her. This was admitted and the court instructed the jury not to consider this evidence in arriving at a verdict for any purpose whatever. I thought at the time it was admissible, but as it had been from Monday noon to Thursday morning I thought there might be some doubt about it and I then resolved the doubt in favor of the defendant and instructed the jury not to consider it; but even if I had not instructed the

jury to disregard it, it could not be error, for the reason that the prosecutrix testified without objection as follows: 'When I returned to the house I saw my sister and told her to keep away from him, and I afterwards told my mother about it.'" As thus qualified, this bill presents no error. Miller v. State, 31 Texas Crim. Rep., 609 and cases cited therein. Besides this, it seems to us that the fact that Gladys did not complain to her mother about appellant's conduct, from Monday at noon until the following Thursday morning, would be a circumstance in appellant's favor and not against him.

By appellant's 5th bill he attempts to complain of the court permitting the sheriff, when testifying, to tell what efforts in the way of advertising and rewards offered for the arrest of the appellant after he had fled the country. The court qualified the bill in allowing it with this explanation: "that the district attorney, after he had asked the sheriff if complaint had been made, asked this question: Q. I will ask you whether or not you made any efforts to find him, if so, what efforts you made? Answer. Why, I had cards struck offering $25.00 reward for him in any jail in the U. S. Question. Did you find him anywhere in this part of the country. Defendant objects to that testimony as irrelevant and immaterial what the sheriff did, offering a reward or any of his own actions in this matter as irrelevant and immaterial and calculated to prejudice the rights of the defendant. The court overruled the objection, to which ruling of the court the defendant excepted. Question. Where did you find him? Answer. I found him in El Paso, Texas, jail. Defendant objections goes to all of that testimony, witness continues: I searched all in this county for him and I mailed and sent cards everywhere. Question. Down in the Pattonville country where he had been living I will ask you if you could find him in that part of the country, if you made search for him and kept up the search and inquiry? Answer. I did, yes sir, made diligent search for him, I found him in El Paso somewhere about the 15th of July, I forgot the date now.

"The above are the questions, answers and objections made to the testimony of this witness." This testimony, as shown by this bill, was legitimate and admissible.

By two other bills appellant complains of the argument of the State's attorneys. The bills do not show in what connection or why these attorneys made such remarks, nor give this court any such information therein as that it can determine what effect such remarks may have had. The jury fixed the lowest penalty. The court, in allowing each bill, qualified and explained it by stating that appellant's counsel did not request any instruction to be given to the jury to disregard the argument if it was improper. No reversible error is shown in either of these matters. Clayton v. State, 67 Texas Crim. Rep., 311, 149 S. W. Rep. 122-3, and cases therein cited.

The only other question is appellant contends that the evidence was insufficient to sustain the verdict and that the court ought to have given his peremptory charge to find the defendant not guilty of an assault with intent to rape. In our opinion the evidence was amply sufficient to sustain the verdict of the jury. See Duckett v. State, recently decided; Hightower v. State, 65 Texas Crim. Rep., 323, 143 S. W. Rep. 1168, and cases cited in this opinion. .

The judgment is affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

(November 13, 1912.)

PRENDERGAST, JUDGE.—There is but one question raised by the motion for rehearing which we deem it necessary to discuss, and that is, whether or not the evidence was sufficient to sustain the verdict, all the other questions having been already sufficiently discussed and correctly decided against appellant.

There is no question whatever, and can be none, as shown by this record, that the appellant did commit an assault and battery upon the little girl, Gladys Young, at the time and place alleged in the indictment. The only question then, is, what was his intention at that time? Did he or not then and there have the intention to have sexual intercourse with this little girl, whether with or without her consent?

Appellant contends now, as he did when the case was originally submitted, that the Cromeans case, 59 Texas Crim. Rep., 611, is exactly in point, and in effect is decisive of this case. We have time and again considered the Cromeans case and in our opinion it is not decisive of, and in the sense contended for by appellant, not applicable to the question in this case. What the court decided in that case was in substance and in effect that the evidence itself demonstrated that while there was an assault and battery then committed upon that child, that it clearly was shown by the whole of it that there was no intention by the appellant to then and there have sexual intercourse with that child whether with or without her consent; but that, at most, the evidence established that the appellant then and there sought to get the child's consent to, at some future time and different place, permit him to have sexual intercourse with her. That is not this case.

Let us briefly again give the substance of the testimony in this case. Appellant was the pastor of this little girl and her family and had been for about two and a half years continuously prior thereto. He had been a frequent visitor at her father's house. On the morning of the assault just before noon he reached her father's house again on a visit and instead of going to the house where the family and mother were, with his wife, or as she did, he saw this

little girl in the garden and went out to where she was. ' No one else was present except the two. When he first went out she was engaged in gathering vegetables and he assisted her. Some conversation occurred between them. Doubtless, the sight of the girl and being thus in close proximity to her, we think the evidence justified the jury to believe that his sexual passions became aroused. He asked the little girl to kiss him; she either innocently did this, or permitted him to kiss her, which further aroused his sexual passions. They were then where they could be seen by persons at the residence. In order to get where no one could see them he proceeded to go over to the portion of the garden where he could not be seen. Then he called the girl to him, got down on his knees, asked her to get on hers; that he then again kissed her without asking her, put his arm around her and drew her over to and up against him; then raised the girl's dress and put his hands on her privates, and began to say sweet things to her. She tried to jerk away from him, but he held her hard and fast and so held her until she finally jerked loose from him and left him. What was his intention at this time when he committed these acts and this assault and battery upon this little girl, if it was not to have sexual intercourse with her and gratify his aroused sexual passions? He was soon after given an opportunity to tell what his intention was by members of his congregation who had heard of it and had been appointed to interview him on the subject. He first merely stated that he only kissed her, then when asked if that was all he did, said, "No, I put my hands under her clothes." And then, did he say that he had only some innocent purpose, no intention to have sexual intercourse with her then and there? No, but when he was then pressed and given the opportunity to tell what his intention was, said: "I guess the old Devil was in me." The old Devil was in him for what? To innocently caress and fondle this little girl, after it is so apparent that his sexual passions had been greatly aroused? What was the jury, under the circumstances, authorized to believe from all these facts and circumstances? We answer unquestionably, that they were authorized to believe, as they did, that his specific intent at that particular time was to have sexual intercourse with this girl. It is no answer to this to say that he did not have sexual intercourse with her, nor that he afterwards changed his mind when he saw the little girl would not consent. But what was it at the particular time when he committed the assault and placed his hands upon the private parts of the girl?

The jury was composed of twelve fair, impartial, unprejudiced and unbiased jurors, selected from all portions of the county, following different businesses and occupations, of different ages, from that of young or younger men to that of old or older men. They know human nature. They know what these acts and this conduct by the appellant meant and what he intended by it. The court told

them plainly and clearly that before they could find him guilty they must believe beyond a reasonable doubt from all the testimony that at the time he committed this assault upon this little girl he did so *"with the specific intent then and there to have carnal knowledge"* of her; and unless they do so believe, they could not convict him of an assault with intent to rape. Again the court told them that if, by this assault upon this girl, they believed that he intended only to indulge in improper fondling· of her person and not to have carnal knowledge of her, then they could not convict him of an assault with intent to rape. Then again, he told them, in effect, that notwithstanding they may believe from the evidence that he was guilty of committing an assault upon this girl, yet, if they have a reasonable doubt as to whether it was with intent to have sexual intercourse with her or only an aggravated assault, then to give him the benefit of the doubt and not find him guilty of anything higher than an aggravated assault. Intent, always in cases of this character, must be proven, but like every other fact, can be proven by circumstantial as well as direct testimony. The appellant was given the opportunity, as stated above, when his churchmen waited upon him, to tell what his intent was. He did not then contend it was not to have sexual intercourse with her. Taking his testimony alone, as detailed by his two churchmen, we think his intent could be found by the jury and that it was then and 'there to have sexual intercourse with this girl. If this had not been his intention, why didn't he say so when the opportunity was given him and he was called upon for an explanation by his own church members? And why did he right away flee and hide out, so that it took months of the most diligent search by the sheriff to find him? If that wasn't his intention, then what was his intention? We answer that it is shown by the facts and circumstances of this case and is supported by the oath of twelve fair, impartial, disinterested, unbiased and unprejudiced jurors by their finding him guilty, that he had the specific intent at the time he committed the assault upon this girl, to have sexual intercourse with her. The district judge, who heard all the testimony, so held in refusing his motion for new trial. It certainly cannot be contended, with any show of reason, that in order for a jury to determine under such facts and circumstances that the appellant's intention was then and there to have sexual intercourse with the little girl that he must actually commit the offense of rape, nor that he must go through every preparation by placing the child and himself both in the very act of sexual intercourse, but not actually penetrating her, to show this was his intent. But, as we said in the case of Duckett v. State, recently decided, only so much preparation, and preparation only to such extent, considering the parties and their surroundings, as would convince a jury of such men as sat upon the jury in this case, beyond reasonable doubt, that his specific intention then and there

was to have sexual intercourse with the little girl. In our opinion the verdict of the jury was supported by the evidence, and we incline to the opinion that no jury of the right kind of men would have found otherwise than as they did in this case.

The motion for rehearing is overruled.

*Overruled.*