RICHARD THOMPSON v. THE STATE.

No. 4798.    Decided January 16, 1918.

Assault to Rape—Insufficiency of Evidence.

Where, upon trial of assault with intent to rape upon a female under the age of consent, the evidence was insufficient to support the conviction, the judgment must be reversed and the cause remanded. Following Cromeans v. State, 59 Texas Crim. Rep., 611, and other cases.

Appeal from the District Court of Eastland. Tried below before the Hon. Joe Burkett.

Appeal from a conviction of assault with intent to rape; penalty, five years and six months imprisonment in the State penitentiary.

The opinion states the case.

*Wm. D. Simpson,* for appellant.—On question of insufficiency of evidence: Hardin v. State, 46 S. W. Rep., 803; Duckett v. State, 68 Texas Crim. Rep., 331, 150 S. W. Rep., 1177; Taff v. State, 65 Texas Crim. Rep., 80, 143 S. W. Rep., 1156, and cases cited in opinion.

*E. B. Hendricks,* Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of assault to rape, his punishment being assessed at five years and six months confinement in the penitentiary.

The testimony of the prosecutrix, bearing directly upon the case, is thus quoted: "My father's mail box is about one-fourth of a mile from the house. I went to the mail box by myself. I saw Richard Thompson. He met me out there at the gate. The gate is close to the mail box. He met me as I was coming back from the mail box. When he first came up he just spoke to me. He did not say anything else just at that time. He walked on with me a while. We were walking back towards my papa's house. On the way to my papa's house he wanted to put his in mine. He said he wanted to put his in mine. He took hold of me. This mail box transaction was some time in 1915. When he said he wanted to place his hands on me, he took hold of my left hand. When he took hold of my left hand he said it would not hurt. He caught my right hand. He had hold of both of my hands. He did not place his arm around my waist. He tried to hold me. He did not place his hands on my legs at that time. I jerked loose from him and cried. I did not holler. I jerked loose from him and went home. When I jerked loose from him he told me not to tell it. He told me not to tell my mamma and papa. He said if I told them they would put me in jail. That occurred in a lane, out in the Flatswood community. I was going home from the mail box. That was all that occurred, that I remember. . . . I have told the jury all that occurred at that time. I did not go on to the house by myself. He went on with me. After I jerked loose from him and he and I walked

on to my father's house, he did not say anything else. . . . I have told everything that Richard Thompson did to me. That is all I can think of now. That was early in the morning, after the mail man passed." On cross-examination she testified: "I have related all that Dick did to me, and all that I have related he did. Dick told my father and—as to the first time I told my father and mother about this—Dick told it the first time. Dick told it first. He didn't tell them, he told somebody else. My father and mother asked me about it. I did not remember just when father asked me about it the first time. I think I was out with him one time after he had that talk." Another witness testified that he was a cousin of the alleged prosecutrix, Nova Yancey, and that appellant told him that he tried to have intercourse with prosecutrix and she refused, and he said she was a nice, virtuous girl. A brother of this witness testified that he was present when the conversation occurred between defendant and the witness. He testified that defendant said he asked prosecutrix to have intercourse with him and she refused, and that she was a nice, virtuous girl. He did not recollect as much of the conversation as the former witness. This is the State's case.

It is contended this evidence does not support the charge of assault with intent to rape on a girl under fifteen years of age. We are of opinion the contention should be sustained. The matter was very thoroughly discussed and the whole question reviewed by Judge Cobb in Cromeans v. State, 59 Texas Crim. Rep., 611. The Cromeans case has been followed, and approvingly, in Hightower v. State, 65 Texas Crim. Rep., 323, and Blair v. State, 60 Texas Crim. Rep., 363. The facts in the Cromeans case are so much like the facts of this case we deem it unnecessary to review this question and the authorities. In fact, the Cromeans case presented a somewhat stronger case for the State than do the facts in this case.

The judgment will be reversed and the cause remanded.

　　　　　　　　　　　　　　　　　　　*Reversed and remanded.*