GEORGE GRACE v. THE STATE.

No. 5232. Decided December 4, 1918.

### 1.—Assault to Rape—Sufficiency of the Evidence.

Where, upon trial of assault to rape, the evidence was sufficient to sus-tain the conviction, there was no reversible error. Following Washington v. State, 51 Texas Crim. Rep., 542, and other cases.

### 2.—Same—Evidence—Circumstantial Facts.

Upon trial of assault to rape, there was no error in admitting testimony describing the condition of the room where the assault had taken place, and what was seen and found there shortly after the occurrence.

Appeal from the Criminal District Court of Harris. Tried below before the Hon. C. W. Robinson.

Appeal from a conviction of assault to rape; penalty, forty years im-prisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*E. B. Hendricks,* Assistant Attorney General, for the State.

PRENDERGAST, JUDGE.—Appellant was convicted of an assault with intent to rape and his punishment assessed at forty years in the penitentiary.

The proof shows that Mrs. Sarah Abbott, the assaulted woman, lived in the country in Harris County, about a mile and a half off of the Dayton road. The assault occurred about 9:30 at night, just after she and her children had gone to bed. She said her attention was first attracted by hearing the screen door, which opened into her boys' bed-room, opened. Two of her boys were in bed in that room. She asked her boys who it was, and said her boys supposed it was their older brother coming in. She asked them again who it was and they did not reply. One of her sons who testified said that when he first saw appellant he was sitting on their bed and feeling around over him and his brother. "He saw that there was two of us boys in the bed, and went into the next room." Mrs. Abbott further testified that she saw him come out of her boys' room into hers. "He came right towards me. I jumped out of the bed, when he got about half way of the room, and I said, 'Ernest, is that you?' and he made no answer, but come and grabbed me, grabbed me by this arm (left arm), and gave me a jerk, and I grabbed at the bed and it jerked down. He never spoke a word. . . . He kept ahold of me. He continued to hold me and pulled me into the boys' bedroom, and was trying to get me out of the door he came in at. I grabbed everything I could to hold to, and I was holding to the facing of the door, when the boy ran out to get some-thing to defend us with, and came in with a club, and hit him and he turned me aloose and ran. He had hold of my arm mostly until he

got into the boys' bedroom. He run his hand up clear under my dress. Just one time is all that he touched me in that way. He did that just before I got ahold of the door facing, and didn't hold me long from the time he first got hold of me in my right arm, till he got me to the door, where the boy hit him, as my strength against him was not very much. It all happened in a very short time. Yes, he held me with one hand and the other hand he put under my dress, and I hit him with all my strength with my right hand, but that was not very much." She said that he was a large, strong man. It was dark, no lights burning. She did not know who it was and said: "No, I could not tell his color, but you know a colored fellow has a scent you can tell. I could tell it was a colored man from the odor."

Her testimony and her son's was further to the effect that when her son struck him on the head with a club, when he had hold of her trying to drag her out, that he turned loose and ran. They then got the gun and loaded it with the only one cartridge they had and thus prepared to defend themselves from another attack. That some fifteen or twenty minutes later he came back into the house and her son shot him. He fell. She and all of her children then ran from the house, went some half mile to a neighbor's and alarmed them and phoned for the officers.

Appellant was thoroughly and completely identified as the person who made this assault by other testimony. The next morning he returned to his employers. He was then found to have been shot in the arm and a bruise on his head. He was without his hat. The officers arrived soon after they were notified, took Mrs. Abbott's boy who had done the shooting with them back to the house. They found therein on the floor appellant's hat and smears of blood on both beds. No doubt after he had been shot and Mrs. Abbott and her children fled from the house he got up and hunted over the two beds for them, which is how came the blood on both beds.

Appellant testified that he was drunk and claimed not to know anything about his going into Mrs. Abbott's house, assaulting her, getting knocked in the head with a club and later shot therein. He was a negro; Mrs. Abbott was a white woman.

In Washington v. State, 51 Texas Crim. Rep., 542, this court, through Judge Henderson, said that the appellant contended therein that the evidence did not authorize the jury to believe that his intent was to rape the seventeen-year-old girl whom he assaulted, but that it equally tended to show that he intended to rob her. He said: "We do not agree with this contention. The evidence shows that appellant seized hold of the prosecutrix; made no demand on her to surrender her property; he knew she was a woman, and there is no testimony tending to show that he had reason to believe she had valuables; she attempted to scream, and he merely told her to hush, and then persisted in choking her down, evidently to make her hush; if he had wanted to take her valuables he had ample opportunity to do so. If appellant had any other purpose than to have carnal intercourse with prosecutrix there is

no manifestation of it in the record, and the circumstances furnished him ample opportunity to have taken her pocketbook, which was in her hand at the time of the assault, or to have taken her breastpin from her neck if he had so desired. His setting upon a young girl in the night-time, under the circumstances, and his violence, and when she attempted to scream, telling her to hush, would strongly indicate his intent. In our opinion the facts are amply sufficient to show his purpose, and but for the facts of her screams, and of assistance rushing to her rescue, he would, no doubt, have accomplished his design." The assault in that case occurred at night in the dark while the girl was going from a street car to her home, a few blocks away.

In Taff v. State, 69 Texas Crim. Rep., 528, the assaulted woman lived with her mother. On the night of the assault she said someone knocked at the door and tried to push it open, but she refused to admit him. He then left. He soon returned and went to the window and asked her to come out, offering her from five to ten dollars to do so. She asked him to leave and he agreed to do so if she would give him some bread and butter, which she did. He left but came back again and asked for water, and when she gave it to him he drank it and tried to raise the window. She tried to prevent the window from being raised when he caught her by the wrist and pulled her towards him. She screamed and jerked away from him. He left. In that case he contended that the evidence was insufficient to show assault with intent to rape. This court held otherwise and affirmed the decision in that case, which carried a penalty of fifty years confinement in the penitentiary.

In Stout v. State, 22 Texas Crim. App., 339, Emma Gatz, a married woman, was the assaulted party. She testified that she and her husband went to bed in a room with the doors closed but a window up. They both went to sleep. Some time after they both went to sleep she felt the hands of some person pressing on her chest. Thinking it was her husband she told him to let her alone, she was sick. She went to sleep again but was awakened after a little while by someone raising her gown. She attempted to raise up but was pressed back. She attempted to raise the second time and was pressed back by the hand of someone. She then looked and saw appellant in that case. She then called to and kicked her husband, who was hard to awaken, and the appellant sprang out of the room through the window. In that case the appellant contended the evidence was insufficient to sustain his conviction for an assault with intent to rape. This court through Presiding Judge White said that while it would ordinarily appear exceedingy improbable and highly incredible that a party would attempt to ravish a married woman in bed with her husband, yet it is by no means impossible. He further said: "In this case there are some apparent inconsistencies shown in the statements made at different times by the principal witnesses for the prosecution, but they do not occur as to the main facts that the assault was made and that defendant was the guilty party.

There is also some conflict in the evidence. This was matter exclusively for the jury to determine. They have seen fit to credit the testimony of the prosecuting witness and we can not see that that testimony is either improbable or untrue. The jury and the court below were in much better attitude to judge of the credit and weight to be given it than are we. That it is sufficient to support the judgment if entitled to credit we have no doubt. Having found no error in the conviction the judgment is affirmed."

In Dibbrell v. State, 3 Texas Crim. App., 456, he was convicted of an assault with intent to rape. The sole question in the case was whether the evidence was sufficient to sustain the conviction. This court, through Presiding Judge Ector, said the facts were that the young lady assaulted was sleeping alone. Her sister, who was in the habit of sleeping with her, was from home at her neighbor's. Her father and two brothers were sleeping in an adjoining room and her mother in still another room in the same building. She was awakened from her sleep by some-one pulling her bed clothes. She raised up and saw something on the floor which she took to be a dog. She put her hand on it and discovered it was a man. He was crouched on his hands and knees and had nothing on but a shirt. She screamed and he fled. She recognized him. She awakened her father and brothers by her screams and they pursued appellant but did not apprehend him. Her brother testified that about an hour before this he saw the defendant just outside of the fence looking into the window and that when appellant saw him he turned away. The court said: "If the defendant entered the room in which the young lady was sleeping, for the purpose of having carnal knowledge of her, without her consent, by force, and in attempting to uncover her to accomplish his purpose, she awoke and gave the alarm, and he, through fear, desisted and ran off, we think the offense as charged was complete, and the judgment should not be set aside." The court further said: "Was it not legally inferable from the evidence that the intent of the accused was to gratify his lust forcibly? The jury was warranted in believing from the evidence that his intent was to commit rape, and that the accused went far enough to establish such intent. The judgment of the lower court is affirmed."

In Shepard v. State, 34 Texas Crim. Rep., 35, wherein appellant was convicted of an assault with intent to commit a rape and the judgment affirmed, the court through Presiding Judge Hurt said that Emma Shepard, the daughter of appellant, therein detailed several assaults committed upon her by appellant. She testified that these several assaults were committed upon her at different times, some of them while she was sleeping in the room occupied by her father and mother and other members of the family. She made no outcry at any time. She claimed to have told her mother and brother and others of these several assaults soon after they occurred. Her mother and brother and the others all testified that she made no complaint to them at any time. When the sheriff arrested him he was found secreted under some bushes

some distance from the house and inquired of the sheriff what it took to constitute the offense of rape.  Judge Hurt said: "The court and jury before whom this case was tried had every opportunity of judging of the credibility of each and every witness, of the manner in which they testified, and we do not feel called upon to disturb the verdict and judgment."

In Crew v. State, 22 S. W. Rep., 973, it was shown that at midnight a fifteen or seventeen-year-old boy went to where Nancy Johnson, the assaulted woman, lived and told her that her aunt, living some distance from her, was sick and had sent for her.  She dressed, went out and got in the buggy with the boy and noticed that he left in an opposite direction whom where her aunt lived.  She wanted to know why he was going in that direction and he told her they were going to drive by Jo Crew's to leave the buggy and would walk from there on to her aunt's.  Upon further inquiry she found that Crew's wife was not at home.  She at once ordered him to stop the buggy, and upon his refusal she stopped the horse and jumped out and began running home. Appellant, Crew, then ran from a fence near, chased her and succeeded in overtaking and seizing her near her home.  He told her to come and go with us.  She refused and demanded to be released, and appellant did release her at her second demand and her threat to call her father. Her mother said it was a bright moonlight night.  She saw appellant catch her daughter near the gate and hold on to her as he dragged her some six or eight feet.  That she started calling to appellant to let her daughter go when he turned her loose.  This court, through Judge Simkins, said: "A new trial is asked upon the ground that the testimony is not sufficient to convict appellant of any crime greater than an aggravated assault.  We think the facts in this case are sufficient to sustain the verdict.  It is true that since the trial of this case the young woman has filed an affidavit that appellant released her as soon as she told him to do so, and before her mother or anyone else told him, and she has good reason to believe that he did not intend to use more force than he did, and that she did not believe he intended to rape her. Yet her belief can not disprove the actual facts in the case.  Decoying her from her house, and endeavoring to get her to his own house, at midnight, and then endeavoring to carry her by force—such conduct, if not authorized by previous circumstances, of which there is no proof, becomes so gross an outrage that it is difficult to appreciate the leniency of the jury.  Judgment is affirmed.  Judges all present and concurring."

In Allen v. State, 76 Texas Crim. Rep., 633, it was shown that the young lady assaulted was going from a street car to her home, a few blocks away.  That she discovered the appellant on a corner of the street with his clothes unfastened and his person exposed.  When she got near him he called her attention to his exposed person and grabbed for her.  She ran and he caught the end of her coat, but she jerked away from him and escaped.  In that case the jury assessed a penalty

of fifty years in the penitentiary. The appellant contended therein that the evidence was insufficient to show that his intent was to commit a rape upon her by force. This court held that the evidence was sufficient and affirmed the case.

See also Duckett v. State, 68 Texas Crim. Rep., 331, 150 S. W. Rep., 1177; Hightower v. State, 65 Texas Crim. Rep., 323, 143 S. W. Rep., 1168; Conger v. State, 63 Texas Crim. Rep., 312; Ross v. State, 60 Texas Crim. Rep., 547; Grimmett v. State, 22 Texas Crim. App., 36. A large number of other cases in point could be cited but it is unnecessary.

There is but one bill of exceptions in the record. Even if it could be considered under the rules, it presents no error. It merely shows that the State, over his objections, asked the witness Dave McKinney this question: "After you were informed of what happened state what you did and where you went." To which the witness answered: "We went directly to the house and made an investigation as soon as we got there. I found a hat there. That is the hat. It was found in the bedroom. I think it was the bedroom where Mrs. Abbott slept. It was found right by the door. I found blood on each bed. I found a piece of plank, one by three, lying across one of the beds that was broken down. Looked like blood stains on each bed from one side to the other. Martin Clauson and one or two others were there at the time." This evidence was clearly admissible.

The judgment is affirmed.

*Affirmed.*