LEROY ARMSTEAD v. THE STATE.

No. 6289.     Decided June 8, 1921.

**Assault to Rape—Insufficiency of the Evidence.**
    Where, upon trial of assault with intent to rape upon a female under the age of consent, the evidence was insufficient to disclose a case of assault with intent to rape, the conviction could not be sustained. Following Cromeans v. State, 59 Texas Crim. Rep., 611. Qualifying Gage v. State, 68 Texas Crim. Rep., 303.

Appeal from the District Court of Austin. Tried below before the Honorable M. C. Jeffrey.

Appeal from a conviction of assault with intent to rape; penalty, ten years' imprisonment in the penitentiary.

The opinion states the case.

*Johnson, Mathaei & Thompson,* for appellant.—Cited Hightower v. State, 65 Texas Crim. Rep., 323.

*R. H. Hamilton,* Assistant Attorney General, for the State.—Cited Gann v. State, 40 S. W. Rep., 725; Hightower v. State, *supra.*

HAWKINS, JUDGE.—Conviction was for assault with intent to rape, punishment being fixed at confinement for ten years in the penitentiary.

No objection was filed to the court's charge; no special charges requested; the record contains no bills of exceptions, and the case is submitted to this court on the sole proposition that the evidence was insufficient to support a conviction of assault with intent to rape.

The prosecutrix, Rosa Ignasiak, was a little Polish girl, not quite fourteen years of age at the time of the alleged offense. Her mother had sent her to a neighbor about two-thirty or three o'clock in the afternoon of the day of the occurrence under investigation for the purpose of getting some yeast cakes. She seems to have remained longer than her mother expected her to, and started home between four-thirty and five o'clock, carrying with her the yeast cakes and two cantaloupes. She was traveling a path or turn-row which was within fifteen steps of a public and much traveled road. When within sight of her house, and approaching a branch which she had to cross, she claims to have seen a negro approaching her from the direction of the branch. The evidence does not disclose whether or not there was any timber on the branch that she was approaching, but it does show that the place where she claims the negro met her was in an open country. She claims this negro was practically nude, being barefooted and having on no clothes except a blue top shirt and a white under shirt. She says he came up to her about seventy-five yards from the branch, and asked her to "give him some;" that she, having reference to the yeast cakes and cantaloupes, said that she was taking them to her mother, when he replied, "I ain't studying that," and then used an expression indicating more bluntly his desire for sexual relations, whereupon she says she ran towards the branch and her home, and that he ran after her. At no time did he place his hands on her, nor get closer to her than three or four feet. She dropped one of her cantaloupes, she says, and some of the yeast cakes, held to the other cantaloupe and took it home with her. She does not say how far the negro followed her, but says he turned off towards the timber before getting to the branch. She claims to have gone directly home, but the record is silent as to what, if anything, she told her mother upon reaching there, or whether she made any complaint to her mother at any time. We may assume that she did, because the record shows that the same evening the officers were in the neighborhood making an investigation, but it is only from this incident in the record that it may be inferred she made any complaint. The next day the sheriff carried the appellant and his brother (the latter appearing to have been known as a crazy boy), to prosecutrix's house, and the evidence shows that he asked her, not if either of the boys was the one who had made the advances to her, but the question seems to have been, "Which one of these is the boy?" whereupon she pointed out appellant. She claims to have recognized him because, she says, "He had black eyes and his hair was cut pompadour." The officers found some tracks of a barefooted person about where the little girl says she commenced to run, but they were too indistinct at this point to be measured or compared accurately. Some distance

from this point they found some barefoot tracks on a branch which were more distinct and they corresponded with tracks made by appellant. The branch where these were found does not appear to have been the one between the little girl and her home. By twenty-six witnesses appellant establishes an alibi which accounts for his presence during practically every minute of the time from about six-thirty in the morning until after dark upon the day in question. The evidence with reference to this alibi is so remarkable in its connected story that it has caused us to scrutinize closely the State's evidence of guilt.

The story told by prosecutrix presents rather an unusual occurrence. If the negro whom she met was seeking carnal favors of her, and expected to secure them over her protest, it is remarkable that he would have left the branch which she was approaching, and in a semi-nude state met her seventy-five yards from the branch in an open place, and near to a public and well-traveled road. This appellant is shown not to have been wearing a blue shirt on the day in question, but a light colored one of some description.

Dismissing from our minds the cogency of the testimony as to alibi, and waiving the question of identity, and taking the uncontradicted testimony of the little girl as to what happened, and for this purpose assuming that the appellant was the negro who accosted her, under the now well established holding of this court, does it show a case of assault with intent to rape? She says he never at any time touched her, and never did get closer to her than three or four feet. If he used the language heretofore set out his conduct was outrageous, and arouses the indignation of every good citizen; but that very fact cautions us to proceed carefully when determining the legal proposition involved. There is no question but that the language used did not constitute an assault. The little girl says that immediately upon the use of that language she turned and ran, and that appellant never got closer to her than before she started; that she outran him. However reprehensible the conduct may have been of whoever it was that approached the little girl upon the occasion in question, if we are to follow the decisions of the court, which, with but one exception, have been uniformly adhered to since the case of Cromeans v. State, 59 Texas Crim. Rep., 611, we must hold that the record does not disclose a case of assault with intent to rape. It is not necessary to discuss the details or quote from the case in question. The propositions laid down in the Cromeans case, *supra*, have been followed with approval in Blair v. State, 60 Texas Crim. Rep., 363; Hightower v. State, 65 Texas Crim. Rep., 323. In reaching this conclusion we do not overlook the case of Gage v. State, 68 Texas Crim. Rep., 303, 151 S. W. Rep., 565. The opinion there was rendered by a divided court, and departed from the holdings in the cases cited. When Thompson v. State, 82 Texas Crim. Rep., 524, was decided by this court at a later date, the Gage case was not followed, but Thompson's case cited with approval, and followed Cromeans, Blair and Hightower, *supra*.

We do not deem it necessary to discuss the law at any length, as an examination of the cases cited will fully disclose our views.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*