## DRAYTON HOOPER v. THE STATE.

### No. 2282. Decided June 11, 1902.

**1.—Murder—Self-Defense—Charge as to the Law of Retreat.**

On a trial for murder, where it appeared that the parties had had a wordy altercation, which was provoked by defendant, after which defendant abandoned the difficulty and mounted his horse to go away, when deceased approached and renewed the difficulty in a manner which caused defendant to believe that he intended to kill him or do him some serious bodily harm, defendant's right of self-defense was revived and perfected, and he had a right to shoot deceased. Under the facts stated, it was also error for the court to fail to charge upon the law of retreat.

**2.—Same—Manslaughter.**

If defendant abandoned the difficulty, still, if his life was not in danger, or he was not in danger of serious bodily injury or deceased was not seeking to get some advantage by which he could take the life of defendant or do him some such bodily harm, after an apparent abandonment, the law of manslaughter would apply to that portion of the difficulty which may have resulted fatally to deceased after such abandonment. And the court should have charged on manslaughter.

Appeal from the District Court of Hays. Tried below before Hon. L. W. Moore.

Appeal from a conviction of murder in the second degree; penalty, twenty-five years imprisonment in the penitentiary.

Appellant was charged by the indictment with the murder of Dee Meeks, on the 14th day of July, 1901, by shooting him with a pistol.

The opinion states the essential facts attendant upon the killing.

*Will G. Barber* and *Ed. R. Kone*, for appellant.—The court gave no charge that defendant was not required to retreat, and his failure to do so is specially excepted to in defendant's motion for a new trial. Penal Code, art. 678; Bell v. State, 17 Texas Crim. App., 550; Pierce v. State, 21 Texas Crim. App., 540; Parker v. State, 22 Texas Crim. App., 105; Gonzales v. State, 28 Texas Crim. App., 130; Ball v. State, 29 Texas Crim. App., 107; Williams v. State, 30 Texas Crim. App., 429; Nally v. State, 30 Texas Crim. App., 456; Carter v. State, 30 Texas Crim. App., 551.

It may be urged that the court having charged generally as to self-defense and the jury having convicted, it becomes equivalent to a finding that there was no self-defense in this case, and therefore the error was harmless. To this we reply that the same line of reasoning would render unnecessary, in any and every case, the giving of this charge, and would render nugatory article 678. The right to stand your ground thereby created is always an incident to the plea of self-defense, and it is part of the law by which the jury are to be guided in weighing the plea. It is designed to prevent the right of a defendant to act in his own necessary defense being limited or in any way abridged by the jury upon the idea that the killing was unnecessary because same could have been avoided by retreat. This statute was designed for a purpose, and as the jury alone pass on the sufficiency of the facts to make self-defense,

this purpose is likely defeated wherever the statute is not given to the jury.

The court erred in not submitting to the jury the issue of manslaughter, because the evidence was reasonably sufficient to raise the issue. There was evidence which, if believed by the jury, was sufficient to authorize them to find that the killing was done under the immediate influence of sudden passion arising from an adequate cause, and the jury should have been permitted to pass upon the effect to be given said testimony. White's Penal Code, secs. 1199, 1200, and cases cited; Tollett v. State, 55 S. W. Rep., 573.

It will be conceded that if the evidence is reasonably sufficient to raise the issue of manslaughter, it was reversible error for the court to refuse to submit same. Now the evidence here was sufficient, when viewed most favorably to defendant on this issue (as it must be), to show this state of case:

Two men, deceased and his brother, had beaten up a small brother of defendant; deceased, the week before the killing, had said that if the Hoopers didn't like this "they could get in the middle of the road," as Meeks was ready for them; this statement was communicated to defendant; he meets deceased by accident on Sunday evening at the schoolhouse; hearing his name called, defendant inquires if he was one of the men who had assaulted the boy, and being answered yes, defendant, evidently very angry, abuses deceased and denounces him as a coward; being then informed that deceased will not fight, defendant says, "I then want nothing to do with you," and goes away. Under these conditions defendant would naturally feel angry and resentful toward deceased, and we suggest that the man of ordinary temper would have felt the same way. But deceased is not satisfied with this, and after some little while he leaves his buggy, and bearing around the trees and the crowd he advances upon defendant, making some statement as to being fixed. Defendant calls to him some three times, "Stop, if you don't mean fight;" deceased continues advancing in the threatening attitude of one hand reaching to his side under his coat and the other extended as if to grab defendant or his horse; defendant draws his pistol and begins firing, continuing after deceased turns to run. Would such conditions be calculated to produce in the mind of the ordinary man anger, rage, resentment or terror to such extent as to render the mind incapable of cool reflection? The whole transaction, after deceased starts to advance, occurs quickly. In view of what had occurred before and what was then occurring, defendant could regard the conduct of deceased in no other light than as a closing in for a fight to the death. Under such conditions the average man would not remain cool. We believe the adequate cause was there, and if so, whether it produced sudden passion which in turn produced the killing were questions for the jury alone. Again, suppose the jury believed defendant's first shots were fired under circumstances making self-defense, but that deceased turned to run and defendant continued firing when no necessity longer

existed. Under such conditions they would not, and the law would not hold defendant entirely blameless, but would it not make a case of manslaughter? See Tollett v. State, 55 S. W. Rep., 573.

*Rob't A. John,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of twenty-five years. The court's failure to charge on the law of retreat, manslaughter and the meagerness of the charge on self-defense, and refusal of the continuance, are the main questions presented for revision.

A brief summary of the evidence discloses that prior to the fatal encounter deceased and his brother had given the small brother of appellant a whipping. About a week before the homicide deceased stated that he understood the Hoopers were mad about this; that he was sorry they had whipped the boy, but "if the Hoopers did not like it they could get in the middle of the road, and he was ready for them." Appellant was informed of this before meeting deceased. Deceased and appellant were strangers, never having met prior to the evening of the killing. On the evening of the trouble, and prior to the homicide, defendant had been to a tournament above the little village of Wimberly, and coming back through the village stopped at the schoolhouse, where a crowd was assembled. Upon reaching the schoolhouse he dismounted from his horse, and while sitting in the crowd heard some one address deceased as Dee Meeks, and this was the first time he knew who deceased was. Deceased was sitting in a buggy. Appellant approached it and asked him if he was one of the men who "beat up the kid." Upon receiving an affirmative reply, appellant cursed and abused Meeks. Deceased said he did not care to fight, as appellant was armed and he was not; that the matter could be settled without a difficulty. Thereupon appellant left deceased, went to and mounted his horse. There is some question as to whether Meeks was in the buggy at the time of this conversation or out on the ground, but this is immaterial. Some of the witnesses testified that appellant cursed deceased; others deny this. Appellant, testifying in regard to this matter, stated in substance that when he approached the buggy he asked the man whom he had heard called Dee Meeks if he was one of those who "had beat up the kid," and being informed that he was, asked deceased, "Don't you think it was very cowardly for two men to jump on a kid?" Deceased replied, "I call myself a kid, too, but I can fight you or any other man." That he then abused deceased as a coward, but did not curse him. Deceased said he did not want to fight, as appellant was armed and he was not. Defendant thereupon walked off and left deceased and mounted his horse to go home. It is further shown that shortly after Hooper had gotten on his horse, Meeks left the buggy and started towards the schoolhouse, and, turning, advanced upon appellant, and when within a few

feet of him, began talking. There was some question as to the position of Meeks' hands during his approach to appellant, and the subsequent colloquy. Some of the witnesses stated that his left hand was extended and his right hand by his side; and in this position appellant fired upon his adversary. Some of the witnesses say that as he approached appellant he said something to appellant about he (deceased) being fixed; that his left hand was extended and his right hand was folded across his breast and under his coat. That appellant told deceased two or three times to stop if he did not mean to fight; that, as he got within a few feet of appellant, the latter drew his pistol and fired four times rapidly, the last as Meeks was falling. Defendant, in this connection, testified that Meeks started from his buggy as if to go into the schoolhouse, but turned and came toward him; that he understood Meeks to say that he was fixed. Witness told him three times, "If you don't mean fight, stop." Meeks continued to advance with his right hand across his breast under the lapel of his coat; and when within two or three feet, Meeks grabbed with his left hand as if to catch the horse's bridle. Defendant drew his pistol and fired three shots before Meeks turned, the fourth shot just as he turned, the last shot being fired at his head. Appellant further testified that he had not gone to the schoolhouse expecting to meet Meeks, who was a stranger to him. One shot entered the top of the head, another between the shoulder and breast, the third one behind the right ear, all ranging downward. It is error under this state of facts for the court to fail to charge the law of retreat. If his testimony is true, appellant had evidently abandoned the difficulty which he sought to provoke with Meeks while Meeks was sitting in the buggy, and had mounted his horse to go away. The second difficulty was brought about by deceased approaching appellant. This placed appellant, under his view of the case, as acting in self-defense. If he believed from the environments of the approach of deceased that he intended to kill him or do him serious bodily harm, he had a right to shoot. His right of self-defense was revived and perfected. This was not a case of imperfect self-defense as was Carter's case, 30 Texas Crim. App., 552. Penal Code, art. 678; Bell v. State, 17 Texas Crim. App., 550; Pierce v. State, 21 Texas Crim. App., 540; Parker v. State, 22 Texas Crim. App., 105; Gonzales v. State, 28 Texas Crim. App., 130; Ball v. State, 29 Texas Crim. App., 107; Williams v. State, 30 Texas Crim. App., 429; Nalley v. State, 30 Texas Crim. App., 456.

The law of manslaughter should also have been given. If defendant abandoned the difficulty and was leaving, and the fatal shot was fired after such abandonment, it raised the question of manslaughter. While it is true appellant had the right, under the law of perfect self-defense, to pursue his adversary or fire upon him until all danger to his life or the infliction upon him of serious bodily injury had passed, without jeopardizing that right of self-defense, still if his life was not in danger or he was not in danger of serious bodily injury, or deceased was not seeking to get some advantage by which he could take the life of appel-

lant, or do some such bodily harm after an apparent abandonment, the law of manslaughter would apply to that portion of the difficulty which may have resulted fatally to deceased after such abandonment. West' v. State, 2 Texas Crim. App., 460; Tollett v. State, 55 S. W. Rep., 573.

Upon another trial the law of self-defense should be stated more fully, so as to present that issue clearly under the facts.

The motion for continuance will not be discussed for the reason that the witnesses may be before the jury upon another trial; if not, the matter will come in different form and manner.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*