## W. M. Cox v. The State.

### No. 77.    Decided December 15, 1909.

**Assault to Murder—Charge of Court—Self-Defense—Imperfect Self-Defense.**

Where, upon trial for assault with intent to murder, the evidence showed, on the part of the State, that the defendant was in the house of the prosecutor for an unlawful .purpose, and, when the prosecutor detected him, ran out of the house, and the defendant, being pursued by prosecutor, attacked him with a knife; and the testimony for the defense was that defendant abandoned the unlawful purpose, ran out of the house, and was pursued by the prosecutor and knocked down by him, and that in the scuffle he cut prosecutor, the court erred in failing to charge the jury that, if defendant had abandoned the unlawful

purpose for which he went into the house, and, while being pursued and assaulted by prosecutor, cut him, he would then have the perfect right of self-defense.

Appeal from the District Court of Cherokee.   Tried below before the Hon. James I. Perkins.

Appeal from a conviction of aggravated assault; penalty, a fine of $100.

The opinion states the case.

*Norman & Shook,* for appellant.—Cited Varnell v. State, 26 Texas Crim. App., 56; Roach v. State, 21 Texas Crim. App., 249; Brazzil v. State, 28 Texas Crim. App., 584; Roberts v. State, 30 Texas Crim. App., 291; McSpatton v. State, 30 Texas Crim. App., 616; Lindsey v. State, 35 Texas Crim. Rep., 164.

*F. J. McCord,* Assistant Attorney General, for the State.—On question of perfect right of self-defense: Franklin v. State, 34 Texas Crim. Rep., 286; Reed v. State, 11 Texas Crim. App., 509.

RAMSEY, JUDGE.—Appellant was indicted in the court below for an assault with intent to murder.  His trial resulted in a conviction of aggravated assault, and his punishment assessed at a fine of $100.  From this judgment appellant has appealed to this court for a reversal on sundry errors assigned.

An inspection of the statement of facts discloses that appellant, on the night of the 3d of December, 1908, went to the home of the prosecuting witness and injured party, Fuller, in his absence. On the night in question Fuller, the prosecutor, had gone to a neighbor's house some two miles away, accompanied by his wife, to some kind of social gathering.  After he had been at his neighbor's house some while he received information that induced him to return home, leaving his wife at the festival.  In this connection prosecuting witness testified as follows: "When I got the information I borrowed a mule and went back home, which was about a mile from there.  And when I gets to the yard gate I gets down and hitches the mule at the gate, and I goes all the way around the house and comes back to the gallery and goes in on the gallery and there was a chair against the front door and I pushed the door open with my left hand and I goes in my pocket with my right hand and gets a match and strikes it, and when I struck the match I saw a man person coming from the direction of the bed where my little girl was sleeping, and when he run out he run to the middle door and jerked it open with one hand and jerked it to behind him, and I run on after him right behind him and jerked the door open, and by that time he was at the back door and jerked the back door open and run out and jerked it to behind him, and

by that time I jerked the back door open, and when I opened the door he was standing on the outside right down on the ground. I didn't know who he was at that time, and when I opened the door he just reached up and caught me on the right side is my recollection. He caught hold of my coat and I walked backward and stepped back up in the room, and when he stepped back in the room he struck me in the side with some sharp instrument, knife or something, in my right side; he cut me in the side with something or other, and by that time I grabbed him and we gets in a tussle there and I managed to throw him down and I jumped straddle of him and choked him until he was about out of breath, and I gets up and goes back in the house on the mantleboard and gets a match and come back and struck the match, and when I come back and struck the match I found out who it was; it was W. M. Cox. He was laying down there by the stove when I struck the match." This is a sufficient statement of the prosecuting witness' testimony. Appellant took the stand in his own behalf, and, in substance, testified that he had been in the habit of meeting the prosecuting witness' wife at various places and having intercourse with her, and that he had an appointment with her to meet her that night at the prosecuting witness' home, she informing him that the prosecuting witness would be away from home, and that he went to the house for that purpose. That he had just gotten in the house when the prosecuting witness broke in on him; that he discovered the prosecuting witness' wife was not at home, and that he immediately attempted to beat a retreat, and was hurriedly leaving the place and abandoning the premises of the prosecuting witness, when he was pursued by the prosecutor, knocked down, and in the scuffle he cut prosecuting witness.

1. Now, upon this state of facts the court charged the jury as follows: "If the occasion of the difficulty was the entry of defendant into J. H. Fuller's home at night, with intent to procure or solicit sexual intercourse with Fuller's wife, and being found there fled and was pursued by Fuller, then, in such case, if defendant voluntarily stopped, and intentionally cut Fuller with a knife or other sharp instrument, before Fuller had committed any assault or violence upon him, further than pursuit, then defendant could not claim, or be allowed any right of self-defense, and the grade of the assault thus committed would be determined by you from the evidence under other instructions herein given you as to the constituents of the different grades of assault submitted to you for a finding; but if, while fleeing, defendant was overtaken and assaulted by Fuller, and by choking or other violence at the hands of Fuller, was in danger of death or bodily injury, and he cut Fuller to protect himself from injury from such assault, then, in such latter case, although defendant could not, on account of his unlawful invasion

of Fuller's home, claim perfect or complete self-defense; yet the offense, if it would otherwise have been an assault with intent to murder, would be reduced in degree by reason of such first assault by Fuller, and would be an aggravated assault." This charge was complained of by appellant because it did not submit a correct rule of law, and that it deprived the defendant of the right, though his intention at the beginning was unlawful to abandon any evil intention, and that the same was a charge upon the weight of the testimony, and deprived the defendant of the right to defend himself against an assault upon him when he had abandoned any evil intention he may have had. We think that the charge of the court was error, and that this error was prejudicial to the rights of appellant, for which the case will have to be reversed. A question similar to this came before the court in the case of Roach v. State, 21 Texas Crim. App., 249. In the Roach case it seems that Roach went to the house of Hefner at night, some five miles north of Greenville, in Hunt County. One Poindexter was living at said house. The witness Poindexter started to leave the room about 9 o'clock at night, and as he opened the door he saw a man standing on the edge of the gallery in front of the door. The witness did not at that time recognize the party, but afterwards the party was recognized. Poindexter immediately closed the door, ran back in the house and got his pistol. Returning, the witness threw the door wide open, and by means of the light thrown from the sitting-room, saw and recognized the defendant. Defendant turned and fled toward the gate. Witness followed into the yard. When the defendant reached a point fifteen or twenty steps from the gallery, he turned and opened fire on the witness. The witness then fired on the defendant, and advanced on him until both of them had gone some distance beyond the gate. Several shots were fired between the parties. It seems there had been a difficulty previous to this between witness and the defendant, in which the witness had been shot. The witness further testified upon cross-examination that the defendant made no demonstration as if to shoot when witness first went to the door. He made no effort to shoot when witness went outside with his pistol, but fled towards the gate. Hefner testified, substantially, to the same facts. This court, speaking through Presiding Judge White, lays down the doctrine that, we think, should control in this case, and that is, that though the defendant may have been in the wrong in going to the house of the prosecuting witness Fuller, and though in law he may have been a trespasser, and that his conduct in going there was wrongful, and he must have known that it was likely to provoke a difficulty should he be discovered by the husband on the night in question, and if when caught in the house, under these circumstances, he, in extremity, should kill or defend himself from an assault by the husband, he

could not plead perfect self-defense, yet if he abandoned the premises, and he should be pursued and assaulted, then his perfect right of self-defense would be restored. This, we think, is the proposition as laid down in the Roach case, supra. Says the court in that case: "If the defendant, intending to kill Poindexter, went to the house where he resided with a purpose to waylay and murder him, and thus provoked the occasion which resulted in his having to shoot at Poindexter, then he could not claim that his act was in self-defense. If, however, he was a mere trespasser upon the premises, and thus provoked the occasion which resulted in his shooting at Poindexter without any intent, on defendant's part, to kill Poindexter or do him serious bodily injury, and without intent to commit any felony, in such case he would not be deprived wholly of the right of self-defense, but such right would only be partial and imperfect, and such as would operate to reduce a homicide, had he committed a homicide, from murder to manslaughter, and when a homicide had not been committed then the offense would be reduced from assault with intent to murder to aggravated assault. . . . If defendant went upon the premises with intent to kill Poindexter, yet, if he abandoned such intention in good faith, and tried to escape from or avoid his adversary, then, if he was pursued, his right of self-defense revives. Of course, there must be a real and bona fide abandonment and withdrawal on his part; for, if there be not, then he will still continue to be regarded as the aggressor." See also the cases of Arto v. State, 19 Texas Crim. App., 126; King v. State, 13 Texas Crim. App., 277; Jones v. State, 17 Texas Crim. App., 602; Franklin v. State, 34 Texas Crim. Rep., 286; Reed v. State, 11 Texas Crim. App., 509. So, it seems that in this case the court neglected to charge the jury that if appellant had abandoned the purpose for which he went to the house, and while being pursued and assaulted, he would then have the perfect right of self-defense. This, we understand, to be the law, and that the charge given by the court was not the law, and takes away from appellant the right to defend himself in all cases where his intention and purpose were unlawful, yet if he had abandoned the same in good faith and was then being pursued, he would have the perfect right of self-defense.

For the error of the court in its charge to the jury in limiting appellant's right of self-defense where he inflicted the injury when being pursued and assaulted, after he had abandoned the purpose for which he had gone to the house, the case must be reversed and remanded, and it is accordingly so ordered.

*Reversed and remanded.*