### H. L. Roberson v. The State.

#### No. 4436.  Decided October 17, 1917.

#### Rehearing denied April 10, 1918.

**1.—Murder—Self-defense—Provoking Difficulty—Charge of Court.**

Where, upon trial of murder, the evidence raised the issue of provoking the difficulty, the court properly submitted a charge thereon.

**2.—Same—Manslaughter—Charge of Court—Provoking Difficulty.**

Where, upon trial of murder, the evidence raised the issue of manslaughter as well as provoking the difficulty, and the court submitted a proper charge upon these issues, there was no reversible error. Following Woodward v. State, 54 Texas Crim. Rep., 86.

**3.—Same—Converse Proposition—Abandonment of Difficulty.**

Where, upon trial of murder, defendant contended that the case was submitted to the jury from the State's standpoint alone, with reference to provoking the difficulty, and that the converse of the proposition was not embodied in the court's charge, and that the evidence showed an abandonment of the difficulty, but the record showed on appeal that the court's charge was correct and otherwise followed approved precedent, there was no reversible error. Following Cox v. State, 57 Texas Crim. Rep., 427, and other cases.

**4.—Same—Charge of Court—Rule Stated.**

Where defendant relies on self-defense and upon communicated threats accompanied by an overt act and not on an actual attack, the court's charge on self-defense should be accompanied by and connected with a charge on the law of threats, but where an actual attack is shown, as in the instant case, such charge is not required; besides, no special charge was requested. Following Chalk v. State, 35 Texas Crim. Rep., 116, and other cases.

**5.—Same—Charge of Court—Undue Repetition.**

Where, upon trial of murder, the State's requested charge was submitted, of which defendant complained as being a repetition unduly emphasizing the proposition that there were shots fired after the necessity ceased, and as not giving the converse of the proposition involved therein, and as omitting altogether the subject of manslaughter, yet, where the record on appeal showed that the defendant was convicted of manslaughter, and the charge of the court was otherwise correct under the evidence, there was no reversible error.

**6.—Same—Attorney and Client—Agreement Between Counsel—Evidence.**

Upon trial of murder. the record showed on appeal, that before the trial an agreement was made by the attorneys of both parties that the examining trial testimony would be available to the respective parties on the trial, and the

record on appeal showed that this testimony and not said agreement was introduced in evidence without objection, there was no violation of the rule that an attorney has no implied authority to make an agreement with opposite counsel with reference to the introduction of testimony which is prejudicial to the accused, and there was no reversible error. Following Pollock v. State, 60 Texas Crim. Rep., 265, and other cases.

**7.—Same—Evidence—General Reputation—Argument of Counsel.**

Where, upon trial of murder, the defendant complained of the cross-examination of his witnesses as to defendant's reputation as a peaceable and law-abiding man, and also to the argument of State's counsel with reference thereto, and the record on appeal showed a conviction for manslaughter, and that the examination of the witnesses in this case was legitimate, and that the argument of State's counsel was invited by the defense, and that there were no requests for special instructions to disregard these, there was no reversible error.

**8.—Same—Motion for Rehearing—Self-defense—Carrying Pistol.**

Where, upon trial of murder, the evidence suggested that the meeting of the parties was unexpected and that defendant had the right to carry a pistol as a traveler, the court should have submitted the defendant's requested charge, in connection with the court's charge limiting defendant's right of self-defense on provoking the difficulty, that the jury would not be authorized to draw an inference adverse to the defendant from his possession of the pistol at the time of the encounter. Following Shannon v. State, 35 Texas Crim. Rep., 2, and other cases.

**9.—Same—Provoking Difficulty—Abandonment.**

See opinion, Davidson, Presiding Judge, that while the defendant is acquitted of murder, yet if the trial court should undertake in the next trial to charge upon the issue of provoking the difficulty, he should also charge on the law of abandonment of the difficulty if the evidence is the same, and not permit too great a latitude in cross-examination in impeaching the character of the defendant as a law-abiding man.

Appeal from the District Court of El Paso. Tried below before the Hon. Dan M. Jackson.

Appeal from a conviction of manslaughter; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*J. H. Burney, T. J. Newton, Victor Moore, M. W. Stanton,* and *Martin & McDonald,* for appellant.—On question of provoking the difficulty: Newman v. State, 69 S. W. Rep., 19; Humphrey v. State, 73 Texas Crim. Rep., 433, 165 S. W. Rep., 588; Carey v. State, 74 Texas Crim. Rep., 112, 167 S. W. Rep., 366; Fox v. State, 71 Texas Crim. Rep., 318, 158 S. W. Rep., 1141; Ford v. State, 77 Texas Crim. Rep., 252, 177 S. W. Rep., 1176; Stanley v. State, 193 S. W. Rep., 151; Mason v. State, 79 Texas Crim. Rep., 169, 183 S. W. Rep., 1153; Smith v. State, 195 S. W. Rep., 595; McCandless v. State, 42 Texas Crim. Rep., 58; McMillan v. State, 58 Texas, 25; Kilpatrick v. State, 189 S. W. Rep., 487; Ware v. State, 152 S. W. Rep., 1077.

On question of self-defense: Sargent v. State, 35 Texas Crim. Rep., 338; Buke v. State, 61 id., 22; Swain v. State, 48 id., 104; Best v. State, 61 id., 554; Foster v. State, 67 Texas Crim. Rep., 5, 148 S. W. Rep., 583.

On question of threats: Tillery v. State, 24 Texas Crim. App., 251; Reinhardt v. State, 60 Texas Crim. Rep., 662; Carden v. State, 59 id., 501; Masters v. State, 160 Texas Crim. Rep., 693; Rutherford v. State, 73 Texas, 132, 164 S. W. Rep., 383; Lyons v. State, 71 Texas Crim. Rep., 189, 159 S. W. Rep., 1070.

*E. B. Hendricks,* Assistant Attorney General, *Leigh Clark,* District Attorney, *Hudspeth & Harper,* and *Lea, McGrady & Tomlinson,* for the State.—On question of provoking difficulty: Gaines v. State, 58 Texas Crim. Rep., 631; Coleman v. State, 49 id., 355, and cases cited in opinion.

MORROW, JUDGE.—Appellant shot and killed H. F. Boykin, was indicted for murder, convicted of manslaughter, and the penalty fixed at confinement in the penitentiary for five years, hence this appeal.

Appellant was foreman of a cattle ranch situated in Mexico known as the T. O. ranch. Boykin owned a pasture near Sierra Blanca, in El Paso County. Mr. Leonard Pence, owner of the T. O. ranch, had arranged with Boykin to pasture cattle. Appellant and other employes, in charge of seventy odd head of these cattle, stopped at Sierra Blanca over night en route to the pasture. The cattle were placed in one of the subdivisions of the railroad stock pens. In another subdivision there were cattle for shipment in charge of a witness named Cross. Boykin resided at Sierra Blanca and his pasture was some twenty-five miles distant therefrom. Early in the morning appellant on going to the stock pens found deceased there; a quarrel between them ensued, and the homicide followed. Prior to the arrival of appellant, Roberson, at the stock pens, Cross and some of his employes reached them. There was a defect in the fence and some of the cattle during the loading got from one of the subdivisions into the other. There was evidence that appellant had been informed that the people in the vicinity of Sierra Blanca were hostile to him and would probably do him harm and that deceased had threatened to kill him. Appellant's account of the difficulty as taken from his testimony was, in substance, as follows:

When he approached he saw that something was disturbing the cattle, and when he got near he saw Cross and deceased in the pen. Asking what they were doing, deceased (whom appellant did not know) said it was none of his damn business, cursed him and said, "We Sierra Blanca people know who you are; you are a damn cowardly son-of-a-bitch," and started toward appellant making a demonstration as to draw a weapon. Appellant, as he claims, then dismounted and drew his Winchester, but discovering that deceased drew a knife, he put up his Winchester and started to enter the gate, but thinking of what he had heard the Sierra Blanca people were going to do, he says: "I decided to stay away from those people. In pursuance of that idea, did not finish opening the gate; got on my horse and rode away to where the pack mules were, out towards the end of the wing just north of the gate, and took the mules back around the wing on west side, so they would not stampede the cattle." He claimed that when he left deceased was still cursing

him, and that when he was riding around the wing deceased climbed up on the west string of the fence, and when appellant came near deceased was on top of the fence with his knife in his hand and began to curse appellant again. Appellant says: "Then I asked him not to curse me and call me a son-of-a-bitch. He was standing on the fence and he reached out with his knife and I struck him on the hand with the rope, and tried to knock the rope out of his hand when he grabbed it with his left hand and threw it inside the corral. He still had his knife in his right hand, and I struck at his hand with my pistol but did not hit it." Appellant claimed that when he asked deceased not to call him a son-of-a-bitch, deceased claimed that he, appellant, had called him one, and that appellant denied it then, and that Dumont called to appellant and said, "Let us get away," and appellant answered, "All right," and rode around to the gate, and while doing so deceased got down off the fence, and when appellant got around to the gate deceased was in the pen and picked up appellant's rope. Appellant says, "I asked him to put his damn knife up and give me my rope, and when my head was turned aside he threw the rope over the fence. He had his knife in his left hand, and when I missed the rope and asked him to give it to me, he replied that 'He did not have my damn rope.' Cross then handed me the rope and I took it in my right hand and started to coil it up. Deceased had been drawing closer and closer to me and as I started to fold the rope up, he started to rush me. I started to strike him with the rope and threw it at him, threw the whole rope at him. He rushed at me with the knife raised in his right hand, and struck my horse, just in front of his ribs, and then he reached up at my body. I pulled my pistol with my right hand, the horse reared and jumped and I shot back over my right shoulder."

Tom Cross claimed that when loading his cattle some of them got mixed with appellant's and that deceased, at his request, was assisting in separating them when appellant rode up to the pens and said, "What in the hell are you doing there?" deceased replying, "Counting the cattle." Appellant told him to get out of there; deceased refused and appellant said, "You will, you son-of-a-bitch." Deceased replied, "You call me a son-of-a-bitch, you are a son-of-a-bitch"; that appellant jumped on his horse and started to untie the gate; deceased walked toward the gate and appellant took his Winchester out of the scabbard and pointed it through a panel of the gate, and deceased told him he was a damn coward; that he did not have anything, and that appellant put his Winchester back in the scabbard and said, "I can clean you without anything," and then rode around the wing about ninety feet long, and came back to the west string of fence (on which deceased had climbed), and told deceased to take back the son-of-a-bitch he called him. Deceased replied, "You called me one first, you take back the one you called me and I will take back the one I called you." Deceased was then sitting on the fence and appellant was on his horse; and appellant hit deceased on the shoulders with the rope. Deceased snatched the rope with both hands and threw it over in the big pen. Roberson then said to deceased,

"God damn you, hand me that rope," and Boykin said he would not do any such a damn thing. Cross then got the rope and handed it to Roberson and he dropped it over his saddle and hit Boykin on the hand with his pistol. Boykin then jumped down in the big pen and walked toward the middle gate. Roberson rode around the wing to the front gate (which someone opened), rode in the pen, swung the rope over his head and hit Boykin over the head with it, knocking him down, and when he got up he started for Roberson, when Roberson drew his pistol (which he had put back in the scabbard after hitting Boykin on the hand with it), and shot deceased. This witness claimed that deceased had a pocketknife in his hand at some time during the controversy, but that he did not see him have it while he was on the fence nor after he got down in the pen.

Elmer Norton, Will Norton, and I. Norton claimed to have seen the trouble from the time Boykin climbed on the fence and they relate the facts, in substance, like Cross related them, except that one or more of them testified that they saw a knife in Boykin's hand at the time he ran at Roberson. For example, Elmer Norton said, in substance: "After Boykin stepped off the fence into the north pen Roberson rode back around the wing on his horse at a trot, opened the gate and rode back into the lot. Boykin was standing in the north pen, toward the second gate, about twenty feet from the middle gate, which leads from the north to the south pen. He was just standing there when Roberson rode into the north pen. When Cross handed Roberson the rope he began straightening it out and after that he hit Boykin first across the head and then across the hand, left hand, and after he had been hit twice, Boykin ran at Roberson with the knife in his right hand." Will Norton said he saw no knife in Boykin's hand; that he heard Boykin tell Roberson that he, deceased, was unarmed and that he, Roberson, was armed and was a damned coward. After Cross gave Roberson the rope, Roberson swung it over his head like any other cowboy and hit Boykin with it twice, and Boykin reached out and got the rope and placed one hand on his hip. He said that Roberson hit Boykin the second time; Boykin rushed at him but had nothing in his hand.

The court, in his charge, qualified appellant's right of self-defense by a charge on the law of provoking the difficulty, and this is assailed on the ground that the issue of provoking the difficulty was not raised by the evidence. The jury would have been justified from the evidence, however, in concluding that when deceased drew his knife and appellant his Winchester and that deceased informed appellant that he was unarmed, that both desisted from the encounter, deceased climbing upon the fence and appellant riding away unpursued for quite a distance with the intention, as claimed by him, of quitting the quarrel and leaving the premises. The inference would also be justified that appellant voluntarily returned, demanded of deceased a retraction, struck him first with a rope, then with a pistol, and that when deceased climbed down into the pen his object was to avoid the fight; that appellant pursued him and struck him with a rope and that these things were done with the intent to provoke the difficulty and were reasonably calculated to

do so and did do so; that appellant intended to bring on the occasion to kill or seriously injure the deceased while acting in apparent self-defense. We think the evidence justified- a charge on provoking the difficulty. The terms of that charge are challenged. The law of provoking the difficulty is submitted in the eleventh section of the charge, and this is subdivided into five parts. The first and second parts contain abstract statements. In the first it is said: "A party may have a perfect right of self-defense, though he may not be entirely free from blame or wrong in the transaction. If the blamable or wrongful act was not intended to produce the occasion, nor an act, which was, under the circumstances, reasonably calculated to produce the occasion or provoke the difficulty, then the right of self-defense would be complete, though the act be not blameless." The second is criticised because therein it is said "That if a person by his own wilful and wrongful act bring about the necessity of taking the life of another," the contention being that the words "wilful and wrongful act" are too broad and fail to limit the wrongful act to such as would· be reasonably calculated to bring about the difficulty, and that it is contradictory to the first part above quoted. A person may bring on a difficulty, which results in homicide, without forfeiting the right of self-defense, and this is true even if the act by which it was brought on was wrongful. Of this, the jury is informed in the paragraph of the charge above quoted, and in the third subdivision the court made it quite specific that, the right of self-defense would not be destroyed unless appellant intending to kill or seriously injure deceased, intentionally provoked the difficulty by the use of means reasonably calculated under the circumstances to do so, and killed deceased in resisting an attack so provoked.

The third subdivision we quote as follows:

"If you believe, therefore, from the evidence in this case, beyond a reasonable doubt, that the defendant, by his own wilful and wrongful acts, if any, engaged the deceased, H. F. Boykin, in a quarrel for the unlawful and wilful purpose of provoking a difficulty, with the unlawful and wilful purpose and intention to kill H. F. Boykin or inflict upon him serious bodily harm, and you further believe from the evidence beyond a reasonable doubt that the defendant did some act or used language or did both with the unlawful and wilful intention of producing an occasion to bring on a difficulty and to kill or inflict bodily serious injury upon the deceased, H. F. Boykin, and that such acts or language, or both, of the defendant, if any such were, were reasonably calculated under the circumstances at the time to provoke a difficulty with the deceased, H. F. Boykin, and that such act or language, or both, if any such there was, of the defendant, caused the deceased to attack the defendant with a knife or make other hostile demonstration toward the defendant showing within itself or by words accompanying it, an immediate intention to kill or inflict serious bodily injury upon the person of the defendant as viewed from his standpoint at the time, and the defendant, in pursuance of his original unlawful and wilful intention to kill deceased or inflict upon him serious bodily harm, if any such intention defendant had, shot with a pistol and thereby killed H. F.

Boykin in order to save his own life, then if you so find, you are instructed that the defendant's plea of self-defense will not avail him, and the homicide would be murder, and if you so find from the evidence beyond a reasonable doubt, you will find the defendant, H. L. Roberson, guilty of murder, and assess his punishment as prescribed in this charge."

The court in another paragraph of the same section of the charge explained to the jury the circumstances under which appellant's offense would not be more than manslaughter, although he provoked the difficulty in its legal sense, using language for the purpose which was approved by this court in Woodward's case, 54 Texas Crim. Rep., 86, and which embodies the principles controlling the court in other cases listed under article 1138, Vernon's Penal Code. The purpose of this part of the charge was to let the jury know that even though appellant by his wrongful act reasonably calculated to provoke an attack brought on the difficulty in which the homicide took place which he intended to provoke, he would not be guilty of murder unless his intention in bringing on the attack was to kill or do serious bodily injury to his assailant.

The charge, we think, is not obnoxious to any of the rules of law relied upon by appellant. The jury was informed in appropriate language that appellant's right of self-defense was impaired only on condition that they found from the evidence beyond a reasonable doubt that appellant intended to provoke the difficulty for the purpose of causing deceased to attack, and thereupon to kill or do him serious bodily harm. That in pursuance of such intention he used means reasonably calculated, under the circumstances, to bring about that result, that the demonstration or attack of the deceased was so brought on and the shooting was pursuant to the original intent to kill or do serious bodily injury. These embodied the elements which must concur to establish provoking the difficulty in its legal sense. Branch's P. C., art. 1138; Young's case, 53 Texas Crim. Rep., 416, 110 S. W. Rep., 445; Vernon's C. C. P., p. 459; Wharton, Crim. Ev., sec. 604; Ruling Case Law, vol. 13, p. 831, secs. 136-137.

Appellant insists that the case was submitted from the State's standpoint only; that the converse was not embodied; and argues that there were three scenes in the tragedy; the first ending when appellant put up his Winchester and rode away; second concluded when after striking or striking at deceased while he was on the fence, appellant again rode away; and the third beginning when appellant rode into the pen after deceased had gotten off the fence or while he was getting off the fence and asked for his rope, which deceased had thrown into the pen.

Appellant presented no prepared special charges, but in some of his exceptions to the charge suggested and requested modifications and additions. In one of these the court was requested to change the charge on provoking the difficulty as originally prepared, and suggested the language in which the change should be made, and the court responded by adopting appellant's request and embodying it in the fifth paragraph of the charge on provoking the difficulty as follows: "If, however, you

should believe from the evidence or have a reasonable doubt thereof, that the defendant at the time of the homicide struck the deceased with a rope, if he did, and that he did so in order to knock a knife from the hand of the deceased or to prevent an assault, real or apparent, upon the defendant by the deceased, and was not then and there striking the deceased with the intention of provoking a difficulty, then the defendant's right of self-defense would not be impaired or abridged and he could stand his ground and resist the unlawful or threatened attack, real or apparent, if any, upon defendant's person by deceased with said knife."

In giving this charge apparently the trial court adopted appellant's theory stated above, as to the subdivision of the scenes of the tragedy, and further acquiesced in appellant's view that no act or conduct of appellant done prior to the time in which he struck or tried to strike, deceased with a rope immediately before the shooting, would authorize the jury to find that appellant provoked the difficulty. The paragraph of the charge covers the conflicting theories and leaves to the jury the solution of the question whether the State's theory that appellant followed deceased into the pen and struck him with the rope intending, and using adequate means to provoke an attack for the purpose of doing deceased bodily injury in resisting it; and appellant's theory that he went into the pen without such intention and threw the rope at deceased to prevent or stay an attack. With the record thus we will not hold that the charge was defective in failure to present the appellant's theory. In a case where the facts indicate that the accused after bringing on a difficulty in its legal sense, abandons it and it is subsequently renewed by the deceased, a charge on the law of such abandonment is required. Cox v. State, 57 Texas Crim. Rep., 427; Hooper v. State, 44 Texas Crim. Rep., 125; Ruling Case Law, vol. 13, p. 835, sec. 138. If this principle applies to the facts here, the fifth paragraph of the charge on provoking the difficulty suggested by appellant and quoted above, met the question by advising the jury in effect that the only phase upon which the provocation of the difficulty could be predicated was the third one.

The court in the ninth and tenth paragraphs of the charge embodied the law of perfect self-defense, and applied it to the facts in an unexceptional manner, following approved precedents, and at the suggestion of appellant added to it a paragraph giving the appellant the benefit of the statute with reference to the presumption arising from the use of a deadly weapon by the deceased.

In response to the exceptions to the charge is a supplemental charge stating the law of threats. The form of the last named charge is not complained of but it is insisted that it is disconnected from the charge of the law of self-defense and that the appellant's rights would have been guarded only by giving not alone a charge on the statute with reference to threats as a separate defense but that the charge on the law of threats in connection with self-defense should have been given. No special charge on the subject was requested but relying upon the exception mentioned appellant insists there was prejudice apparent.

We understand where the appellant relies upon self-defense upon communicated threats accompanied by an overt act and not on an actual attack, that the charge on self-defense should be accompanied by and connected with a charge on the law of threats. Branch's Ann. P. C., sec. 2083, and cases cited. In a case where actual attack, however, is relied upon, the holding of this court has heretofore been that such charge was not required. Chalk v. State, 35 Texas Crim. Rep., 116; Barnes v. State, 39 Texas Crim. Rep., 184; Bankston v. State, 76 Texas Crim. Rep., 504, 175 S. W. Rep., 1069. The evidence of both the State witnesses and defendant go to show that at the time the shooting was done deceased was making an actual attack upon the appellant.

Under these circumstances the authorities mentioned seem to be conclusive against appellant's contention.

The special charge was given at the request of the State as follows: "You are further instructed that if you believe from the evidence that the defendant at the time he shot the deceased had a reasonable expectation or fear of death or serious bodily injury at the hands of the deceased, then you will acquit the defendant, unless you believe from the evidence, beyond a reasonable doubt, that the defendant provoked the difficulty as in the general charge defined, or unless you believe, from the evidence beyond a reasonable doubt, that the defendant continued to fire upon the deceased after the attack, if any, or apparent attack, if any, or apparent danger to the defendant, if any, as viewed from the defendant's standpoint at the time, had ceased to exist and he thereafter killed the deceased, and if you further believe from the evidence beyond a reasonable doubt, that the defendant knew that the danger to him at the hands of the deceased had ceased to exist and that so knowing he continued to shoot if he did and killed the deceased, if he did, then the defendant would be guilty of murder." This special charge is complained of as being a repetition unduly emphasizing the idea that there were shots fired after the necessity ceased and as not giving the converse of the proposition involved therein and as omitting the subject of manslaughter altogether. If the conviction had been for murder we would regard the last criticism as serious. The court, in his main charge, told the jury, in connection with the law of self-defense that appellant acting upon real or apparent danger was not bound to retreat in order to avoid the necessity of killing, and further, that if at the time he shot deceased he had a reasonable expectation or fear of death or serious bodily injury at the hands of deceased he had a right to shoot deceased and to continue to shoot until it reasonably appeared to the defendant that the danger, if any, real or apparent, had passed. The special charge mentioned was given no doubt to present the converse of this theory. I. Norton testified that when appellant hit Boykin over the shoulders with the rope Boykin ducked his head and ran toward Roberson. Roberson turned his horse's head, dropped his rope, jerked his sixshooter and shot back over his shoulder. After firing that shot he went west and turned back and Boykin came north. Again Roberson passed on the west side and fired twice as he came back. Turned back again and at that time Boykin threw up

both hands, hollered "Oh," and kind of stumbled and fell. Roberson passed him and turned back and stood over him and shot him in the breast. Boykin was lying down at the time. Five shots were fired. There was one bullet hole in the right side of the back, another in the left side and one shot in the breast. Other witnesses gave substantially the same testimony.

Cross testified Boykin was lying down when Roberson pulled his horse back and shot him in the throat. Both shots were fired while Boykin was lying on his elbow, with one knee drawn up and the other leg stretched out. At the time the fourth shot was fired Roberson's horse was right close to Boykin, two to five feet from him.

At an examining trial at which the appellant was represented by attorney and the evidence reduced to writing, certain of the witnesses who were not present at the trial, gave evidence. Before the trial an agreement was made by the attorneys representing the State and defendant in which it was stipulated that this testimony would be available to the respective parties on the trial. The testimony was introduced without objection, but on motion for new trial appellant insists that he not being a party to the agreement, his attorney, as such, had no implied authority to make it and that the introduction of the testimony deprived him of the constitutional right to be confronted by the witnesses against him. This court has held that an attorney has no implied authority to make an agreement with reference to introduction of testimony which is prejudicial to the accused, and that such an agreement will not be enforced by the court. Bell v. State, 2 Texas Crim. App., 215; Murmutt v. State, 63 S. W. Rep., 634, and cases cited. The record fails to show any violation of this rule. The evidence, not the agreement, was introduced without objection. It was manifestly within the scope of the authority of counsel for appellant to object to the introduction of evidence which was inadmissible under the hearsay or other rule of evidence, and if dissatisfied with the ruling of the trial court, to bring the ruling and objection before this court by bill of exceptions taken at the trial. In the absence of objection made or motion to exclude the evidence on the trial, its admission will not vitiate the verdict. Pollock v. State, 60 Texas Crim. Rep., 265. In Vernon's C. C. P., p. 534, there are cited a number of cases supporting the proposition that the admission of alleged erroneous evidence could not be reviewed when first complained of in motion for new trial. Among the cases are Clifton v. State, 70 Texas Crim. Rep., 346; Hart v. State, 61 Texas Crim. Rep., 509, and many others. This principle has been given application in capital cases in which there was the death penalty. Bruce v. State, 31 Texas Crim. Rep., 590, and cases there cited. The evidence which it is claimed was inadmissible was cumulative and some of it favorable to appellant, in supporting his theory that the deceased rushed at him before he drew his pistol. It would probably not have been cause for reversal even if admitted over timely objection. King v. State, 42 Texas Crim. Rep., 108; Love v. State, 68 Texas Crim. Rep., 228, 150 S. W. Rep., 920, and cases listed in Vernon's C. C. P., p. 904,

and clearly could not be ground for reversal when admitted without objection, and no complaint made of it until after the verdict.

The appellant's reputation as a peaceable and law-abiding man was in issue. Several witnesses testified in his favor. On cross-examination questions were directed to these witnesses which were made basis of complaint both as to the propriety of the questions and reference to the subject in argument. These bills are long, containing quotations from argument of counsel for both the State and appellant which appear to have been made to the court in support of, or in opposition to, objections made. Some of these witnesses testified on cross-examination that they had heard of previous trials of appellant for murder and that they had heard of his killing outlaws, claiming to have heard of his killing as many as four men. The bill shows that in the course of the examination the attorney for the appellant stated that appellant had killed at different times two Mexicans, and on trial of each case a verdict of acquittal was instructed. An inquiry was made as to whether witnesses had heard of appellant killing a negro porter and throwing him off the train, to which there was a negative answer. Inquiry was also made with reference to whether witnesses had heard of his killing some Mexicans, described as four old Mexicans. Some of the witnesses testified that they had never heard of such a transaction; one of them said that he went with appellant to look at the bodies of some Mexicans and that he had never heard that appellant was connected with the killing. The bill complaining of the argument with reference to these matters states that it was in answer to argument of attorneys for the appellant but fails to state the substance of this argument. Appellant stresses complaint of the following argument: "I believe that the time has passed when a man can come into the courthouse of El Paso County and face twelve honest men, and invoke the power of God, like they have done time and time again, in connection with 'my client.' I appeal to twelve men, created by God, as I was, and as Foot Boykin and Walters Sitters were, and maybe those old Mexicans were."

The examination of the witness to reputation "to test the correctness of his conclusions, and the information upon which they are based," has been recognized by this court as a legitimate exercise of the privilege of cross-examination. Holloway v. State, 45 Texas Crim. Rep., 303. Elementary authorities are to the same effect. Wharton on Crim. Ev., p. 157; also secs. 487-490; Whitmore on Ev., sec. 988; Rice on Crim. Ev., sec. 376. State's counsel appears to have been within this rule.

In the matter of argument complained of, the State's counsel insist that the argument complained of appears from the bill to have been invited, and consequently not available to appellant. Branch's Ann. Stats., p. 205, sec. 363, and cases cited; Deisher v. State, 80 Texas Crim. Rep., 428, 190 S. W. Rep., 729, and cases cited. Also that a failure to prepare and request a special instruction to disregard the argument precludes its consideration, citing Logan v. State, 40 Texas Crim. Rep., 85, 53 S. W. Rep., 694; Davis v. State, 57 Texas Crim. Rep., 545. We have considered the argument in connection with the verdict, the bill

of exceptions, and the record, and are of the opinion that if improper it was not prejudicial to a degree that would justify a reversal of the case upon that ground. It does not put into the record new matter; it is not abusive of appellant; its terms as well as the bill suggest that it was in response to some argument adduced by appellant. The prosecution was for murder, and the verdict for manslaughter. We do not regard it ground for reversal. Vernon's C. C. P., p. 416, and cases cited; Branch's Ann. P. C., p. 207.

We have written our views on the questions deemed most important, and have considered all questions raised. A desire to bring this opinion within reasonable limits impels us to omit further discussion. Our opinion is that no reversible error is presented, and that the judgment should be affirmed, and it is so ordered.

*Affirmed.*

·ON REHEARING.

April 10, 1918.

MORROW, JUDGE.—After considering the motion for rehearing we have reached the conclusion that we were in error in failing to sustain the assignment which related to the trial court's refusal of appellant's request to instruct the jury in appropriate language that the jury would not be authorized to draw an inference adverse to appellant upon the issue of self-defense from his possession of the pistol at the time of the encounter. This phase of the case was not referred to in the original opinion. The circumstances surrounding appellant at the time he met deceased tend to show that his possession of the pistol was not unlawful in that he being a traveler came under one of the exemptions of the statute against the unlawful carrying of arms. Duke v. State, 61 Texas Crim. Rep., 19, 133 S. W. Rep., 432; Schauer v. State, 60 S. W. Rep., 249. The evidence suggests that the meeting with deceased was casual and unexpected by appellant, and the court having limited appellant's right of self-defense by instructing the jury on the law of provoking the difficulty, it was incumbent· upon him to give an appropriate charge with reference to appellant's possession of the pistol. Among the authorities on the subject are Shannon v. State, 35 Texas Crim. Rep., 2; Wilson v. State, 36 S. W. Rep., 587; Dodd v. State, 44 Texas Crim. Rep., 480, 68 S. W. Rep., 992; Grayson v. State, 57 S. W. Rep., 808; Crow v. State, 18 Texas Crim. App., 419, 88 S. W. Rep., 814; Humphrey v. State, 73 Texas Crim. Rep., 433, 165 S. W. Rep., 589; Smith v. State, 81 Texas Crim. Rep., 368, 195 S. W. Rep., 595; Stanley v. State, 81 Texas Crim. Rep., 31.

Because of the error herein pointed out the motion is granted, the affirmance set aside and the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, JUDGE, absent.

DAVIDSON, PRESIDING JUDGE (concurring).—I concur with Judge Morrow in the reversal of the judgment upon the ground and for the

reason stated by him in his opinion granting the rehearing and reversing the judgment. I deem it unnecessary to review that question further than to state my concurrence.

I seriously question that the issue of provoking the difficulty was in the case under the facts stated in the record. I do not care to discuss that question at any length as it can not enter into a subsequent trial as it did on the former trial for the reason that the issue of murder has been eliminated from the case by the verdict of the jury. Upon another trial appellant can only be tried as a basis for conviction upon the issue of manslaughter. Jeopardy and former acquittal will bar further prosecution for murder upon a subsequent trial by reason of the verdict of the jury. The court will take judicial notice of this without the intervention of a plea setting up such acquittal. There are many decisions sustaining this proposition. 47 Texas Crim. Rep., 595; Robinson v. State, 21 Texas Crim. App., 160; Mixon v. State, 35 Texas Crim. Rep., 458; Branch's Ann. P. C., pp. 318 and 321. The issue of provoking a difficulty, therefore, can not arise, so far as murder is concerned, even if provoking a difficulty is in the case. But should the trial court undertake to charge upon the issue of provoking a difficulty upon another trial, it should be followed by a charge on the law of abandonment of the difficulty. If provoking a difficulty was in the case, then I am clear that the issue of abandonment was also in the case. I am also of opinion that the court permitted too great latitude to the State in impeaching the character of the defendant with reference to the death of some Mexicans, and also the matter with reference to a negro on the train. Questions of this character should have some basis in fact and not be a mere assumption without basis of fact as a predicate for such questions and evidence. Unless there be some such basis upon another trial that evidence ought not to be admitted. This would depend upon the developments on the trial.

Believing that the motion for rehearing should be granted, and that the opinion of Judge Morrow is correct upon the question decided in his opinion, I fully concur in that and add the other matters above stated as my views.