## Duncan McDonald v. The State.

No. 15975.  Delivered May 17, 1933.
Reported in 60 S. W. (2d) 778.

The opinion states the case.

*Johnson & Peden,* of Houston, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, ten years in the penitentiary.

Two cars almost collided at the intersection of two streets in Houston.  Three white boys were on the front seat of the one going west on Leland street.  Three negro boys were on the front seat of the other going north on Dowling street.  Appellant was driver of the negro car, Wamsley of the white car, in which was J. C. Walraven, deceased.  A killing of one of the white boys by appellant occurred shortly after the two cars nearly came together, followed by this trial and conviction. Only such statements of the facts as is necessary to shed light on the legal issues on this appeal, will be made.

Appellant claimed that he shot deceased in self-defense. The trial court charged on self-defense, and in several paragraphs

charged on the law of provoking a difficulty, which latter were excepted to on the ground chiefly that such issue was not raised by any testimony. After a careful analysis of the facts, we agree with this claim of the appellant.

Two of the white boys mentioned, testified. There is nothing in the testimony of Walraven, brother of deceased, which in any way brings out the issue under consideration. After describing the situation as the two cars came to within six inches of each other before stopping, he said that everybody sat there for about a minute, and Wamsley asked the negro to move. He testified that somebody in the negro car said something, but he did not know what it was. He did not hear appellant say anything before the latter got out of the car. This is significant in view of the testimony of all the parties that from the point of the near collision the negroes' car moved north some sixty feet, stopped, and at this place appellant first got out of his car. Wamsley, the other white occupant of one of the cars who testified, said that when the cars came to a stop about a foot apart, this appellant called him a half white s— of a b—. Wamsley said he asked appellant to move out of the way, and that appellant asked him what he was going to do about it. Walraven had testified that the negroes had gotten out of their car, and appellant had pulled a pistol, and the party of negroes had advanced toward them, when the white boys got out of their car, armed with tools, and started to meet the negroes. None of the party had ever known or seen those of the other party prior to this meeting. Wamsley testified in regard to the movements of the negroes and his party substantially as did Walraven. We set out at some length the testimony of Mr. Wamsley as follows: "He pulled up and I backed up and started to go around in front of him, for I had more room in front of him than I did back of him, because there were cars on the other side, and when I did, he shot ahead of me again, parked and got out. When I went to go around him, I forgot exactly how I turned my car; I cut it back towards the curb, towards the north. When I started to go around him, in front of him, he shot ahead again so I had to cut back again. That threw me north a little on Dowling. A street car was coming at that time. The street car was coming from the north as well as I remember. The negroes parked their car and got out. None of us boys had gotten out of our car before the negroes got out of their car. All six of them got out of their car. I saw this defendant there at that time; he was the first one out. When he got out, he started right towards my car, with his hand in his bosom. We boys got out. The first thing I did, I

just reached in the back, I had all my tools lying back there, and grabbed my tire tool and then I got out. The other boys got out too. I went toward the negroes. At that time the defendant was still coming toward me, and I met him there in the street. I was closer to my car than to his car when we met. He jerked his gun out, threw a bullet in the barrel, and ran his hand over it like that (indicating)—an automatic—, kept walking and stuck it in my stomach. I don't exactly recall what he said then. He stuck it in my stomach and kept backing me up and hit me on the chin. He had his gun in his right hand. He hit me with his left hand. He hit me hard enough to knock me back. He knocked me two or three feet. Then Johnny came up. Johnny did not say anything. Johnny whirled and hit the defendant. Then Duncan McDonald stepped back, whirled and shot Johnny, with this pistol he had in his hand."

We have set out the above facts because same seem to exclude from this case what has been uniformly held a fact element in order to make necessary a charge on the law of provoking the difficulty. Mr. Branch says in section 1995 of his Annotated P. C.: "A charge on provoking the difficulty should never be given unless self-defense is an issue, and there are facts in evidence which show that deceased made the first assault on defendant, and that defendant in order to have a pretext for killing * * * deceased, did some act or used some words intended to and calculated to bring on a difficulty." Many authorities are cited in support of the text, those specially apt being McMahon v. State, 46 Texas Crim. Rep., 549; Burnett v. State, 51 Texas Crim. Rep., 22. See, also, McCandless v. State, 42 Texas Crim. Rep., 64; Martinez v. State, 81 Texas Crim. Rep., 628; Roberson v. State, 83 Texas Crim. Rep., 244; Gilmore v. State, 91 Texas Crim. Rep., 34; Dugan v. State, 216 S. W., 161; Carter v. State, 87 Texas Crim. Rep., 202.

We have searched the testimony of Walraven and Wamsley, the only two occupants of the white boys' car who testified, for something indicating that they or any of their party made any attack upon or demonstration toward appellant because of appellant's words, attributed to him by Wamsley, when the parties came nearest together at the point where they met, but have failed to find evidence of such attack. On the contrary, unless we misapprehend them entirely, both these gentlemen insist that appellant got out of his car, drew a pistol, and started at them before any of their party got out of their car or did anything which might under any circumstances be considered an attack, or the beginning of one, upon appellant. Mr. Walraven swore: "When the defendant got out of the car, he pulled a

gun. He came back toward us with a gun in his hand. * * * Then three of us boys got out of the car. * * * We started at the negroes with some tools in our hands." Wamsley said the negroes got out of their car first, as follows: "When he (appellant) got out he started right toward my car with his hand in his bosom." The state's case failing to show that because of or responding to any words of appellant an attack was made upon him by deceased or Warmsley, we are constrained to conclude that the element held necessary in the authorities above cited is wanting in the facts of this case. Our authorities are uniform and numerous in holding that where self-defense is relied on, and a charge on provoking a difficulty is not demanded, such charge, if given, is necessarily hurtful, and is an abridgement of the rights of the accused.

As far as we are able to perceive, the question here was who began the difficulty. The drawing of a pistol by appellant may have been such beginning. See Ward v. State, 30 Texas App., 687. It would be for the jury to say under an appropriate charge.

Believing the learned trial judge in error in charging on provoking a difficulty, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*